ABRAM NELLIS, Respondent, *v.* JOHN G. MUNSON et al., Appellants.

An easement to carry water through a pipe across the lands of another for the benefit of the dominant tenement is an interest " in fee, or of a freehold estate" within the meaning of the statutory provision (1 R. S. 738, § 137), declaring that the conveyance of such an interest shall be acknowledged or attested by a witness, " or if not so attested it shall not take effect as against a purchaser or incumbrancer until so acknowledged."

As against a subsequent purchaser, therefore, of the servient premises, a conveyance of such an easement not acknowledged or attested, is invalid.

The fact that the subsequent purchaser had notice at the time of his purchase of the conveyance of the easement does not affect his right to treat the conveyance as inoperative.

*Nellis* v. *Munson* (24 Hun, 575) reversed.

(Argued January 30, 1888; decided February 28, 1888.)

APPEAL from judgment of the General Term of the Supreme Court in the third judicial department, entered upon an order made May 3, 1881, which affirmed a judgment in favor of plaintiff, entered upon a decision of the court on trial at Special Term. (Reported below, 24 Hun, 575.)

This action was brought to restrain the original defendant, who died after judgment, from interfering with a pipe laid across his premises to conduct water to plaintiff's premises.

Laura Swan, in 1867, being owner of certain land, by a sealed agreement with the plaintiff, conveyed to him the right to lay down a water-pipe over the same. The agreement was not then witnessed or acknowledged, but was acknowledged

in March, 1868. After making this agreement, Mrs. Swan, in October, 1867, by an agreement duly witnessed, contracted with one Snell to sell him this land, excepting therein the privilege given to the plaintiff. In November, 1867, she conveyed to Snell the land by a warranty deed, without mentioning therein the easement of plaintiff. Snell took possession under his contract before he received the deed; and, while he owned the land, the plaintiff put in a water-pipe according to his easement. In January, 1869, Snell and wife conveyed the land to the defendant by warranty deed, containing no mention of the easement. Defendant knew that the pipe had been laid and of plaintiff's easement before he purchased.

*Esek Cowen* for appellants. The deed or grant under which plaintiff claims having been executed without a witness is void as against any purchaser or incumbrancer. (*Chamberlain* v. *Spargur*, 86 N. Y. 603.) An easement or servitude such as the deed from Mrs. Swan to Snell purported to create is an incorporeal hereditament, and is within the statute making grants in fee void unless executed with the requisite formalities. (2 Wash. on R. P. [4th ed.] 299, 300; id. [3d ed.] 15; *Willoughby* v. *Jenks*, 20 Wend. 99; *Combs* v. *Vigotty*, 12 W. Dig. 432; *Jenkins* v. *Fahey*, 73 N. Y. 362; 2 Blacks. Com. 106; *Child* v. *Chappell*, 9 N. Y. 254; *Story* v. *N. Y. El. R. R. Co.*, 90 id. 158.) The plaintiff did not by exercising his right to lay down a pipe, under the grant from Mrs. Swan, and by expending money for that purpose, acquire an equitable title to the easement, valid against a subsequent purchaser. (*Arnold* v. *Angell*, 62 N. Y. 508; *Williams* v. *M. & T. F. Ins. Co.*, 54 id. 577; *Southwick* v. *First Nat. Bk.*, 61 How. 166, 170.) If the permission to lay down pipes, given the plaintiff by Snell, or the omission of the latter to object, can be construed as an implied license, such license was revocable. (*Mumford* v. *Whitney*, 15 Wend. 381; *Selden* v. *D. & H. C. Co.*, 29 N. Y. 639; *Wolfe* v. *Frost*, 4 Sand. Ch. 77; *Murdock* v. *Prospect, etc., Co.*, 73 N. Y. 584; *Wiseman* v, *Lucksinger*, 84 id. 31.) The owner of the soil

has a perfect right to make every use of it which can be done without infringing on the servitude. (*Arnold* v. *Stevens,* 24 Pick. 111.)

*E. Countryman* for respondent. The "right or privilege of laying a pipe two feet deep across the defendants' premises, to be used as a conduit" for water over the land, was not a "grant in fee or of a freehold estate," and was not subject to the provision (1 R. S. 738, § 137), requiring a conveyance, if not duly acknowledged previous to its delivery, to be "attested by at least one witness," and declaring that "if not so attested, it shall not take effect as against a purchaser or incumbrancer until so acknowledged." (*Pierce* v. *Keator,* 70 N. Y. 419, 421; 1 Burrill's Law Dict. 530; 1 Bouvier's Law Dict. [9th ed.] 457; *Pomeroy* v. *Mills,* 3 Vt. 280; *Cook County* v. *Chicago, etc., R. Co.,* 35 Ill. 460, 464; *Boatman* v. *Lasley,* 23 Ohio St. 618; *Sanborn* v. *Minneapolis,* 35 Minn. 314, 317; *Jamaica, etc., Co.* v. *Chandler,* 9 Allen, 165; *Thompson* v. *Attica Water Co.,* 1 Civil Pro. R. 370, 371; *Perrin* v. *Garfield,* 37 Vt. 304, 312; *Huntington* v. *Asher,* 96 N. Y. 604; *Race* v. *Ward,* 4 Ellis & Black. 702; *Manning* v. *Wasdale,* 5 Ad. & El. 758; *Owen* v. *Field,* 102 Mass. 90, 103; *Gateward's Case,* 6 Coke, 59b, 60b; *Grimstead* v. *Marlowe,* 4 D. & E. 717; *Hardy* v. *Halliday,* id. 718; *Blewett* v. *Tregonning,* 3 A. & E. 554; *Maunsey* v. *Ismay,* 3 Hurlst. & Colt. 497; *Pixley* v. *Langley,* 7 N. H. 233, 336; *Waters* v. *Lilley,* 4 Pick. 145, 148; *Littlefield* v. *Maxwell,* 31 Me. 134; *Hill* v. *Lord,* 48 id. 84, 98, 99; *Nudd* v. *Hobbs,* 17 N. H. 524, 527; *Pearsall* v. *Post,* 20 Wend. 111; 123–129; *Post* v. *Pearsall,* 22 Wend. 438, 441; *Merwin* ·v. *Wheeler,* 11 Conn. 14, 25; *Harrison* v. *Baring,* 44 Tex. 267; Viner's Arbridg. Prescription; *Hill* v. *Lord,* 48 Me. 84; *Emmons* v. *Turnbull,* 2 Johns. 315; *Littlefield* v. *Maxwell,* 37 Me. 134; Croke Eliz. 180, 363; *Wickham* v. *Hawker,* 7 M. & W. 63; *Tinicurn Fishing Co.* v. *Carter,* 61 Penn. 22, 37–41; 2 Black. Com. 104 marg.; id. 106 marg.; 1 Wash. on R. P. [4th ed.] 82, § 52; *Graves*

v. *Berdan*, 26 N. Y. 498; *Thorn* v. *Wilson*, Sup. Ct. of Ind. April 6, 1887, 11 N. E. Rep. 231; *Mott* v. *Palmer*, 1 N. Y. 564; *Dome* v. *Dome*, 38 N. H. 429; *Morey* v. *Dowling*, 8 Pick. 283; *Howard* v. *Fessenden*, 14 Allen, 124; *Smith* v. *Benson*, 1 Hill, 176; *Smith* v. *Jenks*, 1 Den. 580; *Ombony* v. *Jones*, 21 Barb., 520; *Stoddard* v. *Whitney*, 46 N. Y. 627, 633; *Carr* v. *Carr*, 52 id. 252, 261; *Olcott* v. *Wood*, 14 id. 32; 2 R. S. 134, 137, § 6; *Wiseman* v. *Lucksinger*, 84 N. Y. 31, 37, 38; *Mumford* v. *Whitney*, 15 Wend. 380; *Boatman* v. *Lasley*, 23 Ohio St. 614, 618; *Garrison* v. *Rudd*, 19 Ill. 558, 563; *Ackroyd* v. *Smith*, 10 Com. Bench, 164, 187.) If it should be held that the "right and privilege" granted to the plaintiff was something more than an easement, and carried a freehold interest in the land, the written agreement made by the grantor of defendant is, upon the facts found and undisputed in the evidence, binding on the defendant as owner of the servient tenement. (*Simmons* v. *Cloonan*, 47 N. Y. 3, 13, 14; *McLaren* v. *Hartford Ins. Co.* 5 id. 151; *Fuller* v. *Von Geiser*, 4 Hill, 173; *Sage* v. *Truslow*, 88 N. Y. 240; *Taintor* v. *Hemingway*, 18 Hun, 458; 83 N. Y. 610; *Morris* v. *Witcher*, 20 id. 41, 47; *Witbeck* v. *Waine*, 16 id. 532, 541; *Bogart* v. *Burkhalter*, 1 Den. 125; *Butterfield* v. *McNamara*, 54 Conn. 94; *Drinker* v. *Byers*, 2 Penn. [P. & W.] 528, 530, 531; *Remington* v. *Palmer*, 62 N. Y., 31; *Newman* v. *Nellis*, 97 id. 285.) The grant was good without attestation or acknowledgment as between the original parties. (*Wood* v. *Chapin*, 13 N. Y. 509; *In re Cooper*, 93 id. 507; *Embury* v. *Conner*, 3 id. 511; *Edminster* v. *Cochrane*, 9 Daly, 337; *Baker* v. *Bramer*, 6 Hill, 47; *King* v. *Ridgwell*, 6 B. & Cres. 665; 3 Pars. on Con. [5th ed.] 328; *Parsell* v. *Stryker*, 41 N. Y. 480; *Lowry* v. *Tew*, 3 Barb. Ch. 407; *Harris* v. *Knickerbocker*, 5 Wend. 638; *Parkhurst* v. *Van Cortland*, 14 Johns. 16; Willard's Eq. Jur. 298; *Simmons* v. *Cloonan*, 81 N. Y. 557, 558; *Reiners* v. *Young*, 38 Hun, 335; *Trustees* v. *Lynch*, 70 N. Y. 441, 450; *Rindge* v. *Baker*, 57 id. 209; *Tallmadge* v. *East River Bank*, 26 id. 105; *Root* v.

*Wadhams*, 35 Hun, 57; *Watts* v. *Kelson*, L. R., 6 Ch. App.
166; *Rogers* v. *Sinsheimer*, 50 N. Y. 646; *Goodhart* v.
*Hyatt*, 25 Ch. Div. 182; *Seymour* v. *Lewis*, 13 N. J. Eq.
439; *Hills* v. *Miller*, 3 Paige, 254; *Roberts* v. *Roberts*, 55
N. Y. 275; *Huntington* v. *Asher*, 96 id. 605, 613; *Gilligan*
v. *Feuschter*, 8 State Rep. 221.)

Ruger, Ch. J.   The main question involved in this case is,
whether the right to bring water in a pipe across the lands of
one, for the benefit of another, constitutes an interest " in fee
or a freehold estate " in such a sense that, as against a subse-
quent purchaser, its creation requires a conveyance executed
according to the forms and conditions prescribed by section
137, (3d R. S. [7th ed.] 2195).   This section reads as follows:
" Every grant in fee or of a freehold estate shall be subscribed
and sealed by the person from whom the estate or interest
conveyed is intended to pass, or his lawful agent.   If not
duly acknowledged previous to its delivery  *  *  *  its
execution and delivery shall be attested by at least one wit-
ness; or, if not so attested, it shall not take effect as against
a purchaser or incumbrancer, until so acknowledged."

In order to reach the material question in the case it is well
to dispose of a suggestion that has sometimes been made that
the terms " purchaser or incumbrancer," as used in this sec-
tion, mean only those persons who acquire their rights in
good faith, without notice of prior conveyances.   The case of
*Chamberlain* v. *Spargur* (86 N. Y. 603), is decisive against
this view, and the circumstance that the subsequent grantees
of the premises in question, had notice of the plaintiff's prior
conveyance, may be laid out of view as not affecting the
point in dispute.

Returning to the serious question in the case, we think a
reference to other provisions of the statute, in the same chap-
ter with that referred to, will exhibit the scope and meaning
of the terms " in fee or of a freehold estate," as used in the
section quoted, beyond the possibility of misconception.

The section is contained in chapter 1, part 2 of the Revised Statutes (3 R. S. [7th ed.], 2175) entitled " Of the nature and qualities of estates in real property and the alienation thereof." The first, second and fifth sections of title 2, article 1 of this chapter, read as follows :

" SECTION 1. Estates in lands are divided into estates of inheritance, estates for life, estates for years and estates at will and by sufferance."

" § 2. Every ·estate of inheritance, notwithstanding the abolition of tenures, shall continue to be termed a fee simple or fee, etc."

" § 5. Estates of inheritance and for life, shall continue to be denominated estates of freehold ; estates for years shall be chattels real, and estates at will or by sufferance shall be chattel interests, etc."

It is further provided that the terms " real estate " and " lands," as used in this chapter, shall be construed as coextensive in meaning with " lands, tenements and hereditaments." (§ 10, tit. 5, Chap. 1, 3 R. S. [7th ed.], 2205.)

It is quite obvious, from the plain reading of the statute, that hereditaments are included in the terms " estates of inheritance," and that such estates may be held in fee, and are capable of having the same interest and estate created in them, as may or can pertain to any real estate. They are created, granted, assigned, extinguished and inherited in the same manner and by the same forms as other real property, and are distinguished therefrom mainly by the fact that they are incorporeal, instead of corporeal property. Thus it is said by elementary writers, that the word hereditaments is more extensive in its signification than land or tenements, and signifies anything ·capable of being inherited, and as applied to realty is divided into corporeal and incorporeal. (Bouvier's Institutes, §§ 1595, 1596.) Incorporeal real property is defined to be a right issuing out of or annexed to a thing corporeal, and consists of the right to have some part only, of the produce or benefit of ·the corporeal property, or

to exercise a right or have an easement or privilege or advantage over or out of it. (Bouvier's Institutes, § 1597.)

The principal requisite of an easement is that it be imposed upon corporeal real property, for the benefit of corporeal real property, and that there be two distinct estates, the dominant and the servient. (Bouvier's Institutes, § 1602.) The right of drainage or *jus acquiductus* is said to be an easement which gives the owner of land the right to bring down water through or from the land, of another, either from its source or from any other place. (Bouvier's Institutes, § 1625.) This right cannot exist independent of its connection with another tenement, and therefore cannot be aliened or conveyed except by a conveyance, as an appurtenant of the dominant estate. It can be created only by grant or prescription, and partakes in this as well as other respects of the characteristics of real estate. (Bouvier's Institutes, § 1625; *Cronkhite* v. *Cronkhite*, 94 N. Y. 323; Addison on Torts, 130; 3 R. S. [7th ed.] 2326.) It can be inherited and is therefore classified by elementary writers as an hereditament. Its owner has neither the general property in nor seizin of the servient estate, but by holding a fee in the estate to which such easement is appurtenant, he has an estate of inheritance in the easement. (Washburn on Easements [3d ed.], 15.) An easement, in the strict sense of the word, "is a liberty, privilege or advantage in land without profit existing distinct from an ownership of the soil," and therefore rights to enter upon the lands of another for the purpose of growing crops, or cutting grass, wood or timber, or to derive a profit from the product of the land, or, as it is called, the right of profit *a prendre*, are not considered easements in the strict sense of the term, although they are generally treated under the same heads and governed by the same rules. (*Post* v. *Pearsall*, 22 Wend. 432; *Huntington* v. *Asher*, 96 N. Y. 604; Bouvier's Institutes, § 1625.)

It is, however, quite unnecessary to enter into a consideration of the various kinds of easements and the distinctions existing between them, for, whatever these may be, they are

all alike when attached to a dominant estate, classified by elementary writers as incorporeal hereditaments, and described with the estate to which they are attached as land, and by the express terms of the statute may be held and enjoyed in fee, and are freehold estates. (*Pitkin* v. *Long Island R. R. Co.*, 2 Barb. Ch. 230; Washburn on Easements, 3–14; *Senhouse* v. *Christian*, 1 Term R. 560; *Post* v. *Pearsall*, 22 Wend. 425; *Child* v. *Chappell*, 9 N. Y. 254.) The respondent seems to concede that the right of profit *a prendre* requires a conveyance attended by the same formalities as are prescribed by the section in question, and we are of the opinion that such a right is not distinguishable in this respect from that of easements generally. (*Huntington* v. *Asher*, *supra*.) Washburn in discussing the distinction between an easement and a license, says that " an easement always implies an interest in the land, in or over which it is to be enjoyed. A license carries no such interest. The interest of an easement may be a freehold or a chattel according to its duration. * * * An easement must be an interest in or over the soil. It lies not in livery, but in grant, and a freehold interest in it cannot be created or passed otherwise than by deed." (Washburn on Easements, 6, 7.) And further says, "the ownership of an easement and that of the fee in the same estate are in different persons. Nor does the interest of the one affect that of the other, so but that each may have his proper remedy for an injury to his right, independent of the other." It seems to follow necessarily from the authorities, that an easement to draw water, through pipes over the land of another, for the benefit of a dominant tenement, is an interest in lands existing independent of the fee of the land over which it is exercised, and is an estate in land possessed in fee, by the owner of the dominant estate. It is an incorporeal hereditament transferable according to the statute of descents, and comes directly within the meaning of the terms " fee or freehold estate," as used in section 137.

That it was the intention of the grantor of the easement in question to convey a fee therein, is manifest from the language

of the instrument, as it grants and conveys the interest described to the grantee and "his heirs and assigns," and is made obligatory upon the grantor and "her heirs and assigns." (3 R. S. [7th ed.] 2205, § 1, tit. 5.) We are therefore of the opinion that the easement conveyed was an estate in fee, and required for its conveyance a deed, executed in the manner prescribed by the statute, to affect the right of a subsequent purchaser. We are much impressed with the apparent equities of the plaintiff's claim, in view of the fact that the subsequent grantees of the servient estate, took title with notice of the easement claimed by the plaintiff, but we see no way of escaping the effect, of the plain words of the statute.

It was suggested in the opinion below that the plaintiff could probably establish a right in equity to a conveyance under an implied agreement on the part of Mrs. Swan and her grantees, taking with notice, to convey the easement in question, and that the judgment could be sustained on that theory. We are, however, of the opinion that it was error for the General Term to uphold the judgment upon that ground. Most of the evidence tending to support this theory was admitted by the trial court against the objection by defendant that the facts were not material under the issue formed by the pleadings and this objection was clearly well taken. It is quite apparent that such a view of the case involves very serious questions as to the force and effect of the deeds given by Mrs. Swan to Snell and from Snell to the defendant. These questions cannot be properly and finally determined without the presence of other parties in the litigation, and proper allegations in the complaint to cover them.

The reservation of an easement in the contract between Mrs. Swan and Snell had no effect, as establishing title in the plaintiff, as such reservation could not enure to the benefit of a stranger, and operates in this case only as notice to Snell of the existence of the alleged easement. It was competent for the parties to that agreement to waive performance as to any provision contained therein without the

assent of the plaintiff; and the subsequent delivery of a warranty deed from Swan to Snell affords some evidence of such waiver. The acts of acquiescense on the part of Snell and Munson, in the exercise by the plaintiff of rights over the granted premises, in laying and repairing his water pipes may well have taken place, under the assumption on the part of Snell and Munson, that the plaintiff possessed a legal title to the alleged easement. They had no knowledge of the invalidity of the plaintiff's title and no legal right, so far as we can observe, can be based upon their omission to object to the acts of the plaintiff. It would be quite improper to sustain the judgment here upon a theory which was not set up in the complaint, or tried and determined by the trial court. The case was tried upon the theory, presented by the complaint, of a legal right to the easement in question, and the only evidence of such right was the deed from Mrs. Swan to the plaintiff, now alleged by the defendant to be invalid as to subsequent purchasers. The deed from Mrs. Swan to Snell is, so long as it stands unreformed, an apparent bar to the claim made by the plaintiff, and the court would be wholly unwarranted in reforming such deed without the presence in the litigation, of the parties who claimed rights under it. We do not wish to be understood as intimating that the plaintiff possesses equitable rights which could be enforced in any form of action, but we are of the opinion that such an issue should not be tried without appropriate pleadings setting forth the nature of the right claimed, and an opportunity to meet it by evidence on the part of the defendants.

We think the judgment of the General and Special Terms should be reversed and a new trial ordered, with costs to abide the event.

All concur except ANDREWS, J., not voting.

Judgment reversed.