## WILLARD RICHMOND *vs.* SUSAN F. W. AMES.

Worcester.   January 10, 1895. — October 19, 1895.

Present: FIELD, C. J., ALLEN, HOLMES, KNOWLTON, MORTON, LATHROP,
& BARKER, JJ.

*Deed — Breach of Covenant — Encumbrance — Easement — Finding — Principal
and Agent — Notice to defend Action — Husband and Wife — Damages —
Counsel Fees — Date of Assessment — Report — New Trial.*

It is not within the ordinary scope of the duty of an agent, appointed to manage
real estate, to appear for his principal in a suit between other persons relating
to real estate not belonging to the principal, but which has been conveyed by
the principal, and to take upon himself the defence of such suit.

A notice to a grantor of land, that the grantee has been sued by a third person
claiming a right of way in the land upon which the grantee has encroached with
a building, should be such as to give the grantor information that he is called
upon to come in and defend the suit, if he desires, and that he is to be held
responsible for the result of the suit.

Evidence that a husband, who acted as the agent of his wife in the management
of her real estate, was informed orally by the grantee in a deed from her that
such grantee had been sued by a third person claiming a right of way in the
land conveyed upon which the grantee had encroached with a building, and
that the husband might be needed as a witness in such suit, without any inti-
mation that his wife should be informed of it and should take upon herself the
defence of the suit, will not warrant a finding that the notice was intended as a
notice to the wife to come in and defend the suit, or was so understood by the
husband.

If it was reasonable for the grantee in a deed containing a covenant against encum-
brances to buy off an encumbrance on the land conveyed, and the sum paid was
reasonable, he can recover such sum in an action for breach of the covenant,
with interest from the time of payment.

*It seems,* that the amount paid by the grantee in a deed containing a covenant
against encumbrances for reasonable counsel fees, in defending, in good faith, a
suit for encroaching on a right of way claimed in the land conveyed, may be
recovered in an action by him against his grantor for breach of the covenant, if
it was the grantor's duty to defend that suit, and he had an opportunity and
declined so to do ; but whether such fees can be recovered if no opportunity
was given the grantor to defend the former suit, *quære.*

In an action for breach of the covenant against encumbrances in a deed, when the
encumbrance is a right of way, and has not been relinquished, the damages are
that amount of money which is a just compensation to the plaintiff for the real
injury resulting from the encumbrance ; and such damages are to be assessed as
of the date of the trial.

If an action for breach of the covenant against encumbrances in a deed is reported
by the Superior Court for the determination of this court, which is to enter

such judgment "as shall be deemed proper," and it does not appear from the report upon what principles of law the damages were assessed, a new trial will be ordered upon the question of damages only.

CONTRACT, for breach of the covenants in a deed from the defendant to the plaintiff of land in Worcester. Writ dated June 12, 1893. Trial in the Superior Court, without a jury, before *Hopkins*, J., who reported the case for the determination of this court, in substance as follows.

On April 1, 1873, Isaac Davis conveyed to the defendant a tract of land described as follows : " A certain lot or parcel of land, with the buildings thereon, situated on the easterly side of Main Street in said city of Worcester, and with the privileges and appurtenances thereto belonging, bounded and described as follows : northerly on land of James Green, one hundred (100) feet ; easterly on an open passageway twenty (20) feet wide, sixty-six (66) feet more or less to an open passageway nine (9) feet four (4) inches wide; southerly on said last named passageway one hundred (100) feet, westerly on Main Street sixty-six (66) feet more or less," and containing the usual covenants.

On October 11, 1877, the defendant conveyed to the plaintiff the land in question, the description of which was as follows : " A certain tract or parcel of land located on the easterly side of Main Street, in said Worcester, bounded and described as follows, to wit: beginning at the southwest corner of the estate hereby conveyed, which is also the southwest corner of the estate conveyed to me by Isaac Davis, by his deed bearing date April 1st, 1873, being recorded in Worcester County Registry of Deeds, book 892, page 519 ; thence northerly by line of said Main Street thirty-five feet, more or less, to a point in the easterly line of said Main Street, which said point would be intersected by a line running parallel to the southerly boundary line described in said Davis' deed, above referred to, and distant northerly sufficient to pass through a point four inches northerly from the southerly line of the southerly granite pilaster, now standing in front of the store now occupied by Hiram H. Ames; thence easterly, passing through said point, in said pilaster, and parallel to said southerly boundary line referred to in said Davis' deed, one hundred feet, to a passageway twenty feet wide ; thence southerly by line of passageway thirty-five feet,

more or less, to a passageway nine feet four inches wide; thence westerly by line of said way one hundred feet, to the line of said Main Street and the place of beginning, meaning and intending to convey all of the southerly portion of said estate, as far northerly as said point on said pilaster, with same distance in the rear," and containing the usual covenants.

In 1834, the land through which the passageway described in the above deeds ran, and on both sides thereof, was owned by Isaac Davis, and the land on the northerly side of the passageway at the corner of Main Street was occupied by a block known as the Slater block, extending about thirty-six feet in depth and forming to that extent the northern boundary of the way. On the south side of the way a block called the Quinsigamond Bank block was built by him, and sold in 1863 to five grantees, with a right of way in Layard Place, so called, which was the way in question.* Beyond the southeasterly corner of the Slater block the northern line of the passageway was not marked or defined by any structure; but at that time, and for more than twenty years prior thereto, one Starkie as tenant, and the other persons who used the way and had rights of way therein as owners of real estate abutting on said way, as set forth in *Starkie* v. *Richmond*, and *Green* v. *Richmond*, 155 Mass. 188, had travelled over the open space which extended easterly from the rear of the Slater block in a northeasterly direction around the corner of the Slater block to some buildings in the rear. The Quinsigamond Bank block had an ornamental front, which, at the corner upon Main Street and the passageway above referred to, projected into the way beyond the main line of its wall, and at different intervals along the wall there were projections into the passageway, varying in width from one inch to two feet and a half.

In 1878 the plaintiff removed Slater block, and erected the building now standing on the northerly side of the passageway. While he was engaged in that work, the wife of Starkie, who owned buildings in the rear and was authorized to represent him, went to the defendant as soon as the work had progressed

---

* A plan of the premises is given in the cases herein referred to, namely, *Starkie* v. *Richmond*, and *Green* v. *Richmond*, 155 Mass. 188, 190.

enough to show where the walls were to be, and told him that he had gone over the passageway; to which the defendant replied " that his deeds were all right." Whereupon Starkie's wife said that " her husband's deeds were before his, and that her husband understood that he had nearly ten feet of the passageway." The plaintiff's new building extended easterly from Main Street eighty feet and two tenths, leaving the passageway between it and the Quinsigamond Bank block of a uniform width of nine feet and four inches, measuring from the northerly wall of the bank building.

After the notification by Starkie to the plaintiff, the latter took no steps, except as appears in the evidence below, to notify the defendant of the existence of an alleged claim of right in the land now covered by the front corner of his present building, or in the land subsequently enclosed by his fence, or of the suits of Starkie and Green against him. He took no steps to remove the encumbrance, if any existed.

He proceeded to build his building, and later to join in the concreting of a portion of the way, and to erect and maintain his fence, as described at the time of the trial reported 155 Mass. 188.

The defendant's husband, who acted as her agent in the management of her property, was present as a witness at that trial. The plaintiff testified as follows:

" Q. With whom did you treat when you were purchasing this land ? A. Hiram Ames.

" Q. Mrs. Ames's husband? A. Yes.

" Q. When you were sued, in the equity suits of Green and Starkie against you, did you see Mr. Ames? did you give him any notice of it? A. I did.

" Q. And he was a witness here at the time of the trial? A. Yes."

The defendant testified as follows:

" Q. You are the defendant in this case? A. Yes, sir.

" Q. And Hiram Ames was your husband? A. Yes, sir.

" Q. This is the deed to you, and the deed to Mr. Richmond? (Deeds produced.) A. Yes.

" Q. Did you have a notification of the pendency of the Green and Starkie suits against Mr. Richmond? A. No, sir.

" *Q.* Or any notification that you were to be held responsible for them ?  *A.* I did not.

" *Q.* Up to the time this suit was brought against you?  *A.* No.

" *Q.* What did Mr. Ames do, in connection with your real estate ?  *A.* He collected the rents and did the business for me."

On cross-examination, she testified as follows :

" *Q.* Your husband managed the real estate for you always?  *A.* Yes.

" *Q.* You personally did not participate in the management of it at all?  *A.* I allowed him to do it.

" *Q.* You allowed him to do it, he was your agent ?  *A.* Yes."

Within a short time after taking his deed from the defendant, and before he made any alteration in the property, the plaintiff discovered that other parties had rights to an open and unobstructed passage over the way which precluded him from a right to build over the way.  Without resorting to his grantor, · the plaintiff then made a claim of damage upon Davis, and was paid by him the sum of $2,000 for surrendering the right to build over the way mentioned in the deed from Davis.

Upon the above facts, the judge found as follows :

" 1.  That the southerly boundary line of the land conveyed by the defendant was a straight line running from the easterly line of Main Street in a southeasterly course to a twenty-foot passageway in the rear ; that this line coincided with the northerly line of a tract of land, called a passageway, nine feet and four inches wide, throughout its whole extent ; that this northerly line of passageway is parallel with and nine feet and four inches from the building on the south side of Layard Place ; and that this passageway or tract of land and its northerly boundary line constitute a monument in the deed.

" 2.  That other persons had paramount rights in some portion of the area included in the defendant's deed to the plaintiff, with its southerly boundary line thus established.

" 3.  That in order to remove so much of the encumbrance as is affected by the cases of Starkie and Green against Richmond, the plaintiff had to pay in damages $2,587.86 ; for reasonable counsel fees, $677.46 ; and for witness fees, $51 ; making a total of $3,316.32.

" 4. That by reason of said encumbrance upon a triangular piece of the plaintiff's land at the southeast corner, the plaintiff's estate was diminished in value, in 1892, to the extent of $232.54.

" 5. That the plaintiff is entitled to recover the several sums aforesaid, with interest from October, 1892, to date."

Such judgment was to be entered " as shall be deemed proper."

The case was argued at the bar in January, 1895, and afterwards was submitted on the briefs to all the judges.

*R. Hoar*, for the defendant.

*W. S. B. Hopkins*, (*F. B. Smith* with him,) for the plaintiff.

FIELD, C. J.   The report of this case is in some respects too meagre to present the questions of law involved in it in a satisfactory manner.   We do not know from the report whether the $2,587.86 which the plaintiff " had to pay in damages " " in order to remove so much of the encumbrance as is affected by the cases of Starkie and Green against Richmond," was the sum of the damages assessed in those cases, if any damages were assessed, or whether it was a sum agreed upon by the parties to those suits.   We do not know whether the court in the present case found that this was a reasonable sum to be paid, or whether the court held that, by reason of the notice of the pendency of those suits given to the husband of the present defendant, she became conclusively bound to pay to the present plaintiff the amount of the damages recovered in those suits, if any were recovered.   We do not know why the court found that the plaintiff in the present suit was entitled to recover interest " from October, 1892."   This may have been the date when the money was paid by the present plaintiff, but that does not appear in the report.   The date of the writ in the present action is June 12, 1893.   The report refers to the cases of *Starkie* v. *Richmond* and *Green* v. *Richmond*, found in 155 Mass. 188, and it may be considered that those cases as they are there reported are to be taken as a part of the report of the present case.

The original papers in those cases entered in this court show that it was a part of the final decree in each case that the plaintiff's damages should be assessed by a jury, but it does not appear, and we have no means of knowing that this was done, or

that the damages were assessed in any manner, although as it seems the briefs of both parties in the present suit assume that the damages were assessed, and also assume that the damages found in the present case to have been paid by the plaintiff are the sum of the damages assessed in those suits.

No specific questions of law are reported in the present case for the consideration of this court, but certain facts are reported, some of the evidence is reported verbatim, and there are certain findings of fact by the court, and this court is to enter such judgment " as shall be deemed proper." We see no reason to doubt that the Superior Court was warranted by the evidence in finding as it did in the first and second clauses of the findings of fact set out in the report.

The remaining questions of law relate to the measure of damages. The plaintiff's claim is, that the land conveyed to him by the defendant's deed was on its southerly boundary subject to a right of way in favor of other persons. The suit is maintained on the covenant against encumbrances. The suits of *Starkie* and *Green* v. *Richmond* were suits in equity to compel the defendant therein, who is the plaintiff in the present suit, to tear down a building which he had erected, and which was found to extend over a small part of the way, and also to remove a fence which enclosed a triangular piece in the rear of the lot, which was subject to this right of way. The court, under the facts found in those cases, refused to order the removal of the building, and appointed commissioners to run the line of the way. We understand that the fence was at some time removed, leaving the triangular piece thereafter open for the use of the persons entitled to use the way. Although the building encroached upon the way, yet the court permitted the building to stand, and decreed that the plaintiffs in those suits should be compensated in damages to be assessed for the destruction in part of their right of way. We do not know on what principles the damages were assessed in those suits, if they were assessed, or what issues were submitted to a jury, if any were submitted.

If the fair interpretation of the third clause of the findings of facts set out in the report is that the plaintiff bought off the encumbrance of the right of way so far as the building extended over the line of the way, and had to pay therefor $2,587.86, and

if it be assumed that these are the damages assessed in the suits of *Starkie* and *Green* v. *Richmond,* one question is whether the present defendant had notice of those suits, and was called upon to take upon herself the defence of them. Upon this question all of the evidence is reported. The evidence tends to show that the husband of the present defendant had notice of the bringing of those suits and was a witness at the trial of them, and that he managed his wife's real estate for her by her permission, but there is no evidence that the wife, who is the present defendant, had any notice. There is no evidence that the husband had notice in terms that his wife would be held responsible for the result of the suits, or that she was called upon or would be given an opportunity to defend them. There is no evidence that the notice was given with any such intention, or was understood by the husband to be a notice to his wife to come in and defend the suits. We doubt whether the fact that the husband was the agent of the wife in the management of her real estate made him her agent to receive any such notice for her. It is not within the ordinary scope of the duty of such an agent to appear for his principal in suits between other persons relating to real estate not belonging to his principal, and to take upon himself the defence of the suits. In giving such a notice, although the strict formalities of the ancient law are not now required, still, whatever its form, the notice should be such as to give the person notified information that he is called upon to come in and defend the suit if he chooses, and that he is to be held responsible for the result of the suit. *Boston* v. *Worthington,* 10 Gray, 496. *Chamberlain* v. *Preble,* 11 Allen, 370. *Elliott* v. *Hayden,* 104 Mass. 180. *Boyle* v. *Edwards,* 114 Mass. 373. The principal object of the suits of Starkie and Green was to compel the defendant therein to remove a building which he had erected. The assessment of damages was incidental only, and if it be assumed that the present defendant could properly be vouched in to defend such suits, there is no antecedent probability or presumption that the defendant in suits of this nature would be willing to intrust the defence to another person.

It may be that notice of the pendency of a suit, without more, given to the person who is responsible over, may, under some circumstances, imply that the person notified is called upon to

defend the suit, and it may be so understood by that person, but this is not the ordinary effect of such a notice. There is no evidence in the present case that the notice was anything more than information orally given to the husband that the suits had been brought and that he might be needed as a witness, without any intimation that his wife should be informed of it and should take upon herself the defence of the suits. We are of opinion that, on the evidence reported, it could not properly be found that the notice was intended as a notice to the wife to come in and defend the suits, or was so understood by the husband.

Still, if this defendant is not bound by the assessment of damages in the suits of Starkie and Green, yet if it was reasonable for the present plaintiff to buy off the encumbrance, so far as the building was concerned, and if the sum paid was reasonable, the plaintiff can recover such reasonable sum in the present suit, with interest from the time of payment. If it was a question reasonably doubtful whether the plaintiffs in the suits of Starkie and Green were right in their contention as to the right of way, the present plaintiff had the right to defend those suits, and it may be that he had the right to ask the present defendant to defend them, and that any expenses reasonably incurred in defending against the claim of a right of way made in those suits he can recover of the present defendant. *Bradshaw* v. *Crosby*, 151 Mass. 237. *Farnum* v. *Peterson*, 111 Mass. 148. Whether such expenses should include reasonable fees paid for counsel, in addition to the taxable costs, is on the authorities a question of some difficulty. If it was the duty of the present defendant to defend the suits, and she had an opportunity of defending them and declined to do so, then, if the present plaintiff in good faith defended them, it would seem that reasonable counsel fees should be recovered. *Westfield* v. *Mayo*, 122 Mass. 100. See *Leffingwell* v. *Elliott*, 10 Pick. 204. If no opportunity was given to the present defendant to defend the former suits, the law, perhaps, is more doubtful. See *Lindsey* v. *Parker*, 142 Mass. 582. *Boston & Albany Railroad* v. *Charlton*, 161 Mass. 32. We are unable to determine from the report precisely what the court found in these respects.

One contention is that the present plaintiff, after notice by Starkie's wife in 1878 that he was proceeding to build on

the passageway, persisted in going on with the erection of his building, and thus by his own fault increased the damages which he had to pay, and it is argued that the present defendant ought not to be compelled to pay damages occasioned by the fault of the plaintiff. If damages were assessed in the suits of Starkie and Green, we have said that we do not know on what principles they were assessed. We infer that the damages should have been assessed in those suits on the principles of a compulsory purchase of the encumbrance, so far as the erection of the building was concerned, and that this should have been done on the theory of paying compensation at a fair price for the encumbrance in view of all the circumstances. It is probable that the court, by refusing to compel the defendant in those suits, who is the present plaintiff, to take down his building, and, by ordering an assessment of damages, did not mean to give to the plaintiffs in those suits an opportunity to obtain an unreasonable price for a release or discharge of the encumbrance. It is entirely consistent with the facts reported, that the present plaintiff proceeded in good faith in erecting his building, even after the notice of Starkie's wife. The facts so far as they are reported are. such that it might well require the judgment of a court in order to determine the boundaries and width of the passageway which Starkie and Green were entitled to use. If the damages assessed in the suits brought by them are not to be taken as conclusive upon the defendant in the present suit, it was for the court to determine whether the present plaintiff acted reasonably in contesting those suits and in buying off the encumbrance.

In regard to the triangular piece, we infer that the court in the present case estimated the diminished value of the plaintiff's estate by reason of the encumbrance, not as of the date of the deed or as of the time of the trial, but as of date when the encumbrance of the right of way under the building was extinguished by purchase. In an action on the covenant against encumbrances, when the encumbrance is a right of way, and has not been relinquished, the damages are that amount of money which is a just compensation to the plaintiff for the real injury resulting from the encumbrance. *Wetherbee* v. *Bennett*, 2 Allen, 428. The general rule is stated in *Harlow* v. *Thomas*, 15 Pick.

66, 69, as follows: "The general rule in cases of this kind is plain and undisputed. If the covenantee has fairly extinguished the encumbrances, he ought to recover the expenses necessarily incurred in doing it. If they remain and consist of mortgages, attachments, and such liens on the estate conveyed as do not interfere with the enjoyment of it by the covenantee, he can recover only nominal damages. But if they are of a permanent nature, like the perpetual servitudes in this case, such as the covenantee cannot remove, he should recover a just compensation for the real injury resulting from their continuance. *Prescott* v. *Trueman*, 4 Mass. 630." See *Batchelder* v. *Sturgis*, 3 Cush. 201.

We think that these damages are usually assessed as of the date of the trial. If there have been special damages theretofore suffered by the plaintiff by reason of the exercise of the right of way, these may be shown up to the date of the trial, and, if the easement is of a permanent nature, the question is how much at the time of the trial is the plaintiff's estate diminished in value by reason of the existence of the encumbrance.

As it seems to a majority of the court that it does not appear upon what principles or rules of law the damages in the present case have been assessed, they are of opinion that there should be a new trial, but only upon the amount of the damages.

*So ordered.*