The defendant owned and operated a ferry between the boroughs of Manhattan and Brooklyn in the city of New York. By agreement, dated August 22, 1892, it gave to the Brooklyn City Railroad Company the use of a space, one hundred feet square, for a car stand and for switching purposes at its Brooklyn terminal. The grantee undertook to move and rebuild the ferry house to another part of the land, and carried out its undertaking at a cost of $83,545.38. The grantor reserved the right, upon notice of six months, and upon payment to the grantee of the cost of moving and rebuilding, to terminate the grant.
The situation stood unchanged until June, 1906, when the city of New York began proceedings to condemn and appropriate the terminal for the improvement of the water front. Commissioners of estimate were appointed. *Page 22 
The defendant, without waiting for their award, transferred the terminal to the city in December, 1906, by voluntary sale. The price, $750,000, was paid by the city for a conveyance with full covenants.
The defendant, having parted with its ferry and distributed its assets, determined to dissolve. Dissolution was effected in March, 1908, by consent of the directors and stockholders without the action of the court (L. 1900, ch. 760; formerly section 57 of the Stock Corporation Law; now section 221 of the General Corp. Law; Consol. Laws, chap. 23). Litigation between the railroad company and the city was even then in progress. The railroad company made claim to compensation as the holder of an easement. The city, contesting the claim, asserted that the easement had been cut off by the conveyance, and that the right of action for damages was not a charge upon the res. The controversy ended, after many years of litigation, by the recognition of the claimant's title (Matter of City of New York,76 Misc. Rep. 358; 150 App. Div. 908; 206 N.Y. 655, decided June 29, 1912). On January 25, 1913, the city paid to the railroad company $91,482.19, ($83,545.38 with accrued interest) as the price of the extinction of an easement then a burden upon the land.
This action is brought to recover damages for breach of the defendant's covenant that "the said premises" were "free from incumbrances" at the time of the conveyance. The statute under which the defendant was dissolved, continues the corporate existence "for the purpose of paying, satisfying and discharging any existing debts or obligations," and provides that "for the purpose of enforcing such debts or obligations," the corporation may sue and be sued "until its business and affairs are fully adjusted and wound up" (L. 1900, ch. 760; then section 57 of the Stock Corp. Law; now section 221 of the Gen. Corp. Law). Judgment has gone against the plaintiff on the ground that no debt or obligation existed when the defendant was dissolved. *Page 23 
We think that "debts or obligations," within the purview of this statute, are as broad as "liabilities." No doubt they have a narrower meaning at some times and in some contexts (Munzinger
v. United Press, 52 App. Div. 338). Justice and reason and the analogy of kindred statutes must fix the limits of extension (Jacobs v. Monaton R.I. Corp., 212 N.Y. 48, 54). The legislature did not mean that a privilege to dissolve at the pleasure of the stockholders should become a privilege at the like pleasure to change the course of distribution. This statute speaks of the payment and enforcement of "debts or obligations." Another, applicable to corporations of the same class, says that dissolution shall not affect the remedy for "liabilities" previously incurred (Business Corporations Law, sec. 5; Consol. Laws, ch. 4). Another says that the directors, in the event of dissolution, shall be chargeable as trustees for "creditors" (Gen. Corp. Law, sec. 35). These statutes and others like them (Gen. Corp. Law, secs. 191, 261, 156) are to be construed together (Marstaller v. Mills, 143 N.Y. 398). In varying phraseology, they embody the same thought. "Liabilities" are to be paid (Marstaller v. Mills, supra; Shayne v. Evening PostPub. Co., 168 N.Y. 70), and the liquidator is to pay them. It makes no difference whether they have their origin in contract or in tort (Marstaller v. Mills; Shayne v. Evening Post Pub.Co., supra). It makes no difference whether the liquidator is court or corporation, receiver or director. Distribution does not vary with the title of the statute.
The defendant's liability is not only a "debt or obligation;" it is a debt or obligation that existed when the corporation was dissolved. This is not the case of a mere money incumbrance which leaves possession undisturbed (Delavergne v. Norris, 7 Johns. 358; McGuckin v. Milbank, 152 N.Y. 297; Rawle Covenants for Title, secs. 190, 191; 3 Sedgwick Damages [9th ed.], secs. 968, 970). The remedies then open, we need not now consider. *Page 24 
This is the case of an incumbrance that in itself is an eviction (Scriver v. Smith, 100 N.Y. 471; Harrington v. Bean,89 Me. 470), the incumbrancer already in possession, with encroaching sheds and switches. No rule of law limits the covenantee in such conditions to an award that is merely nominal (Huyck v. Andrews, 113 N.Y. 81; Rawle Covenants for Title,supra; Sedgwick Damages, supra). The damages may be measured by the difference between the value of the land without the servitude and with it (Huyck v. Andrews, supra; Harrington v.Bean, supra; Harlow v. Thomas, 15 Pick. 66, 69; Richmond v.Ames, 164 Mass. 467, 476; Bailey v. Agawam Nat. Bank,190 Mass. 20, 25). They may be measured by the moneys reasonably expended by the owner in freeing the land and extinguishing the burden (Prescott v. Trueman, 4 Mass. 627; Bailey v. AgawamNat. Bank, supra; 3 Sedgwick Damages, secs. 967, 979; McGuckin
v. Milbank, supra). Such payments are not inadmissible as evidence of damage because made after action brought (Brooks v.Moody, 20 Pick. 474; Johnson v. Collins, 116 Mass. 392,394; Tibbetts v. Leeson, 148 Mass. 102, 104; Mosely v.Hunter, 15 Mo. 322, 330; Potter v. Taylor, 6 Vt. 676). They do not change the cause of action (Tibbetts v. Leeson, supra.Cf. Child v. Stenning, L.R., 11 Ch. D., 82, 85). They are merely means and methods for the ascertainment of the loss. Dissolution or bankruptcy does, indeed, draw a dividing line as the result of accidents of time between claims capable of being proved, and those required to be rejected. The principle of division, however, is not the fact of liquidation. The principle of division is the existence of a present right to liquidate (Business Corporations Law, sec. 5; Marstaller v. Mills,supra; and cf. Wood v. Fisk, 215 N.Y. 233, 240; Williams
v. U.S.F. G. Co., 236 U.S. 549, 556).
We hold, therefore, that the defendant is still liable to suit. Whether the distribution of its assets in advance of dissolution may make a judgment, if recovered, futile, *Page 25 
we do not now consider. Upon the record now before us, that question is not here. The collection of the judgment must wait upon its entry. If the defendant is right, this action would have to fail though the assets were still intact and in the possession of the liquidator. The fund in that view is to be reserved for claims already liquidated. The law, as we read it, does not discriminate so partially in behalf of favored classes.
Immunity from suit failing, the defendant contests the merits. A grant in fee or of a freehold estate "does not take effect as against a subsequent purchaser," even though a purchaser with notice (Nellis v. Munson, 108 N.Y. 453; Chamberlain v.Spargur, 86 N.Y. 603), unless the grant is acknowledged or unless "its execution and delivery" are "attested by at least one witness" (Real Property Law, sec. 243; Consol. Laws, ch. 50). The grant of this easement was neither acknowledged nor attested. The secretaries of the two corporations "signed their names as part of the execution of the instrument," each for his own principal, "and not to attest an execution already completed" (Deffell v.White, L.R., 2 C.P., 144; Doe v. Chambers, 4 A. E. 410). Delivery, as well as signature, must be attested, to satisfy the statute (Real Prop. Law, sec. 243). Since the grant is imperfect, and the city a subsequent purchaser, the easement, it is said, was extinguished by the purchase; the incumbrance is illusory; the breach of covenant unreal.
We think the equities arising from contract, possession and improvement are not so easily destroyed. The statute nullifies the instrument of transfer considered as a formal grant, but it does not nullify rights and interests which would be maintained and protected irrespective of a grant. The railroad was not outlawed in taking an imperfect deed. Its plight is surely no worse than if it had taken no deed at all, but had gone into possession under an oral agreement that it would receive a deed thereafter. Its entry was accompanied by valuable *Page 26 
improvements, the moving and rebuilding of the ferry house, upon the faith of the defendant's covenant and in performance of its own. In equity, its rights were equivalent to those of ownership (Young v. Overbaugh, 145 N.Y. 158, 160; Messiah Home forChildren v. Rogers, 212 N.Y. 315; McKinley v. Hessen,202 N.Y. 24; Woolley v. Stewart, 222 N.Y. 347). No purchaser with notice would be suffered to ignore them. The imperfect deed might be disregarded, but not the equities behind it. We find nothing to the contrary in Chamberlain v. Spargur and Nellis v.Munson (supra). All that they decide is the effect of notice when restricted to the deed and nothing else. The question is distinctly reserved in Nellis v. Munson (108 N.Y. at pp. 461, 462), whether different effect may not be given to notice of extrinsic equities. That question is now here. Possession and improvements are effective against subsequent purchasers if the possessor of the land is there without a deed. We find it inconceivable that they should be ineffective, in like circumstances of notice, when he is there with an imperfect deed.
There remains one other question, suggested, not by counsel, but by members of the court. A covenant against incumbrances must be restricted, it is said, to incumbrances unknown to the grantee when accepting the conveyance. Such is not the law as our decisions have declared it (Callanan v. Keenan, 224 N.Y. 503,508; Pryor v. City of Buffalo, 197 N.Y. 123, 136; Huyck v.Andrews, 113 N.Y. 81). The value of covenants of title would be seriously impaired if their operation could be limited by notice, actual or constructive, of the presence of a hostile right (Huyck v. Andrews, supra, at p. 90). The claim is offset by its negation. The covenant is an assurance that what is asserted by the claimant to be a right is in truth a delusion or a pretense. The city took the defendant at its word. It contested the hostile claim. It carried the controversy to this court in the effort to prevail (206 N.Y. 655). Now, worsted in the *Page 27 
fight, it falls back on the assurance of indemnity. We think the promise must be redeemed.
The judgment should be reversed, and a new trial granted, with costs to abide the event.