In the Matter of the Application of the CITY OF NEW YORK Relative to Acquiring Land for Thirty-ninth Street Ferry, Etc.

(Supreme Court, Kings Special Term, April, 1912.)

Eminent domain — condemnation proceedings — measure of compensation — taking by municipality — who entitled to award — payment of award and apportionment among those entitled — right of lessee:

Where by a lease a ferry company agreed to maintain and run its ferry at the place built upon for the benefit of its lessee, a railroad company, or, in default thereof, to pay back to the lessee money expended by it for the improvement, the lease attached to and ran with the land upon which the lessee made the improvement; and, where a city with knowledge of said lease, its terms and conditions, pending a proceeding to condemn the entire property of the ferry company; purchases all except the leasehold interests of the railroad company, it will be presumed that, in paying the ferry company, allowances and deductions were made for the claim of the railroad company, and the report of the commis-

sioners that the city pay to the railroad company the nominal value of its lease, which was terminated by the removal of the ferry houses, will be confirmed.

PROCEEDING to condemn property of a ferry company.

Archibald R. Watson, corporation counsel, for City of New York.

George D. Yeomans, for Brooklyn Heights R. R. Co.

CRANE, J. The difficulty which has arisen between the parties appears to be due to the different way in which they view this proceeding. The city considers it a proceeding merely to condemn a piece of property, 100 feet by 100 feet, or the leasehold of that property, while the railroad company considers it a proceeding to condemn the entire property of the ferry company, including the portion 100 by 100, and the leasehold; the city considers that the lease merely covered trackage on the strip 100 by 100, while the railroad company considers it a trackage lease in connection with and dependent upon an adjoining ferry. The view taken by the railroad company I consider to be the correct. one.

The city commenced this proceeding to condemn all the property of the Thirty-ninth street ferry and succeeded in purchasing for $750,000 all but the leasehold of the railroad company. If the matter had proceeded in the usual course to a final determination the property would have been condemned in its entirety at the ascertained valuation and as between the ferry company and the railroad company there would have been awarded to the railroad company out of this amount at least the $83,545.38 spent by the railroad company in improving the property under and in accordance with the terms of this lease. Instead of proceeding to a final determination as to all of the property the city purchased, pending the proceeding, all the ferry's property except the leasehold. At the time it knew of the existence of the lease, its terms and conditions, and the claim which the railroad

Supreme Court, April, 1912. [Vol. 76.

company had upon the property purchased. It must, there-fore, be assumed that in paying the ferry company allow-ances and deductions were made for this claim. This pro-ceeding was to obtain all of the property of the ferry com-pany, including the leasehold of the railroad, and must be viewed as such, and not merely as a proceeding to take the piece 100 by 100, or the rights therein.

The claims of the railroad company extended further under its lease than to mere trackage privileges. From a mere reading of the lease it is apparent that the ferry com-pany leased the property to the railroad company in order that cars might stand, for the convenience of the ferry pas-sengers and to the profit of both companies, at and near the ferry house. For this purpose the railroad company spent $83,545.38 in accordance with the lease to remove the ferry house and rebuild it adjoining the leased property.

Unless the ferry house was maintained as thus built by the railroad company and passengers landed adjoining the property leased on which the cars stood the lease was value-less and the railroad company's money was expended on a subterfuge. No construction can be given to this lease which would permit the nullification of the intention of the parties. The leasing of the plot on which the cars were to be stalled and the building of the adjoining ferry house by the railroad for the ferry company and the maintenance of the ferry were all part of one agreement.

If the ferry company, after accepting the improvements made by the railroad company under its lease, should seek to terminate its ferry or dispose of its property without paying back the money expended to the railroad company, a court of equity would impress a lien upon the land at the instance and in behalf of the railroad company.

The rights under the lease were not merely a claim against the ferry company for the amount of money expended, but an equitable interest in the property to the extent of the amount expended by the railroad company to improve it pursuant to the agreement.

The city purchased the ferry company's property with full knowledge of this equitable interest and should pay to

the company the amount which the ferry company was bound to pay pursuant to the lease.

The value of the lease is not merely the value of the right or privilege to store cars upon the strip 100 by 100, it is the value of this right in connection with the going ferry with the ferry house where the railroad company built it, together with the right of receiving $83,545.38 at the termination of the lease or the doing of such acts as would amount to the termination of the lease. This sum expended by the railroad company which the lessor promised to pay back for the improvements made may be received as evidence of the value of the leasehold. When it is determined, as it must be, that by the terms of this lease the ferry company agreed to maintain and run the ferry at the place built upon for the benefit of the railroad, or, in default thereof, to pay back the money spent by the railroad company for the improvements, and that this agreement attached to and ran with the land upon which the railroad company expended this money, the result reached by the commissioners in their report, compelling the city, the grantee of the ferry company, to pay back the $83,545.38, the minimum value of the lease now actually terminated by the removal of the ferry houses, must be approved and confirmed.

*Report of commissioners confirmed.*