DUNN v. DUNN et al.

(Supreme Court, Appellate Division, Third Department.   June 27, 1912.)

1. VENDOR AND PURCHASER (§ 228*)—BONA FIDE PURCHASERS—PRIORITY—RECORD.

So far as a deed by several grantors was acknowledged or attested by a witness, it takes priority over a subsequently executed, but prior recorded, deed; the grantee of the latter deed having actual notice of the former, and not being a purchaser for a valuable consideration.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 495–501; Dec. Dig. § 228.*]

2. VENDOR AND PURCHASER (§ 235*)—BONA FIDE PURCHASER—"VALUABLE CONSIDERATION."

One dollar is not such "valuable consideration" for a deed as gives a subsequent purchaser priority over a senior deed through priority of record.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 567–569, 571–576; Dec. Dig. § 235.*

For other definitions, see Words and Phrases, vol. 8, pp. 7271–7273.]

3. VENDOR AND PURCHASER (§ 228*)—BONA FIDE PURCHASER—ACKNOWLEDGMENT OR ATTESTATION—NECESSITY.

Under 1 Rev. St. (1st Ed.) pt. 2, c. 1, tit. 2, § 137, Real Property Law of 1896 (Laws 1896, c. 547) ,§ 208,. re-enacted in Consol. Laws 1909, c. 50, § 243, which provides that an unacknowledged and unattested deed is invalid as against a subsequent purchaser, such a deed is invalid, though the subsequent purchaser had actual notice of the deed.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 495–501; Dec. Dig. § 228.*]

4. PARTITION (§ 8*)—PARTITION DEEDS—CANCELLATION—MISREPRESENTATION.

A deed from a mother to her son to effect a partition should be set aside for his misrepresentations as to the acreage and value of tracts involved, even if he acted innocently in making the misrepresentations, where he obtained more than one-half of the land in value under a representation that he was getting one-fourth only.

[Ed. Note.—For other cases, see Partition, Cent. Dig. §§ 19–25; Dec. Dig. § 8.*]

5. PARTITION (§ 8*)—PARTITION DEED—EXECUTION—FRAUD—BURDEN OF PROOF.

Where a son was intrusted by his mother with having land surveyed for partition between them, the burden is on him to show that a deed he procured her to give him for his interest was fair to her.

[Ed. Note.—For other cases, see Partition, Cent. Dig. §§ 19–25; Dec. Dig. § 8.*]

6. DEEDS (§ 69*)—CANCELLATION—MISTAKE.

Equity can relieve against a deed for mutual mistake unaccompanied by fraud, where the subject of the conveyance is so materially variant from what the parties supposed it to be that the substantial object of the conveyance failed.

[Ed. Note.—For other cases, see Deeds, Cent. Dig. §§ 156–164; Dec. Dig. § 69.*]

Kellogg, J., dissenting.

Appeal from Special Term, Delaware County.

Action by Jennie F. Dunn against Edward E. Dunn and others. Judgment for plaintiff, and defendant Edward E. Dunn appeals. Affirmed.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

The following memorandum was filed by Eugene Clinton, referee, at Special Term:

Hiram Wooster died intestate in the year 1857, seised and possessed of the land described in the complaint. The tract originally contained 770 acres of land. It extended back from the Delaware river south about two miles, and was mostly wild timber land. A small portion along the river was cleared and used for farming purposes on which was located an old house and a small barn. The original tract was 50 chains in width on the south or back end. Shortly before his death Hiram Wooster conveyed to John Q. Humphrey a strip off the west side of the tract, which was fifteen chains wide on the back and contained about 170 acres. Therefore the tract or parcel of which Hiram Wooster died seised contained about 600 acres, and was 35 chains in width on the south or back line.

Hiram Wooster left neither father nor widow nor descendants, but left Olive Wooster, his mother, and three sisters, Augusta E. M. Dunn, Olive E. Wooster, and Clarissa Harper, and two brothers, Lyman Wooster and Enos B. Wooster. Enos B. Wooster died intestate and without issue in 1879. The mother, Olive Wooster, died September 14, 1875. Lyman Wooster died in 1863, leaving a widow who is now deceased, and six children, viz., Lyman M. Wooster, Mary E. Wooster, Maria Parmalee, Clara Hall, Olive Hard, and Edith V. Crandall, his only heirs at law and next of kin.

Clarissa A. Harper conveyed her undivided one-fourth share or interest to Augusta E. M. Dunn by deed bearing date July 10, 1891, which was recorded in Delaware county clerk's office January 29, 1908, in liber 157 of deeds at page 4. Olive E. Wooster conveyed her undivided one-fourth share or interest to Augusta E. M. Dunn by deed bearing date April 23, 1896, which was recorded in Delaware county clerk's office January 29, 1908, in liber 151 of deeds at page 261. Lyman M. Wooster, Mary E. Wooster, Maria Parmalee, Clara Hall, and Olive Hard, being all of the children and heirs at law of Lyman Wooster, deceased, excepting his daughter, Edith V. Crandall, conveyed their right, title, and interest in said land to Edward E. Dunn by deed bearing date June 25, 1883. This deed was signed and executed by the several grantors at different times. The only controverted fact in regard to the execution of this deed is as to whether or not its execution and delivery by Mary E. Wooster was attested by a witness. The grantee, Edward E. Dunn, testified that it was signed in March, 1888, at Susquehanna, Pa., in the presence of himself and of John Pendergast, a notary public, and Frank Page and William Donahue; that the notary public did not take the acknowledgment because it could be acknowledged in the state of New York and save sending the deed to Montrose, Pa., for a certificate; that Frank Page and William Donahue signed as subscribing witnesses at that time. He gave a very fair account of the details of the transaction considering the time which has elapsed since it occurred. It appeared that Pendergast and Donahue died a number of years ago, and that Page was a mechanic in the railroad shops at Susquehanna, that he later moved away, and his whereabouts was unknown at the time of the trial. The grantor Mary E. Wooster testified that she did not know Frank Page or William Donahue; that she never requested either of them to sign the deed as witnesses; and that neither of them signed the deed at the time she signed it. On cross-examination, however, she testified that the deed was signed in Susquehanna, but she could not remember the place; that she could not remember who was present beside herself and Edward E. Dunn. She was unable to give any of the details, and had very little recollection of the transaction. By an examination of the ink used in writing the signature of Mary E. Wooster, and the signatures of Frank Page and William Donahue, and comparing them with the other signatures and the deed, and from all the evidence and circumstances, I am led to believe that the execution and delivery of this deed as to Mary E. Wooster was attested by Frank Page and William Donahue.

Maria Parmalee signed the deed to Edward E. Dunn some time before it was signed by Mary E. Wooster, and its execution and delivery was never attested by a witness. It was acknowledged by Maria Parmalee and Mary E.

Wooster March 21, 1908, but after the deed hereinafter mentioned to the plaintiff Jennie F. Dunn was executed and recorded.

Lyman M. Wooster, Mary E. Wooster, Maria Parmalee, Clara Hall, and Olive Hard, being all the heirs at law of Lyman Wooster, deceased, except- ing Edith V. Crandall, and being the same persons who executed the last- mentioned deed to Edward E. Dunn, also executed a deed to the plaintiff Jennie F. Dunn for the nominal consideration of $1, which deed bears date January 28th, 1908. It was acknowledged by Maria Parmalee, Mary E. Wooster, Olive Hard, and Clara Hall March 9, 1908, and by Lyman M. Wooster and wife March 11, 1908. This deed covers the premises described in the complaint, and was recorded in Delaware county clerk's office March 16, 1909, in liber 154 of deeds at page 535.

[1] At the time of the execution and delivery of the last-mentioned deed, the grantee, Jennie F. Dunn, had actual notice of the deed from the same grantors to Edward E. Dunn. In so far as the deed of Edward E. Dunn was acknowledged or attested by a witness, it was and is prior in time and prior in right to the deed to Jennie F. Dunn, even though her deed was first recorded. Williamson v. Brown, 15 N. Y. 354; Cambridge Valley Bank v. Delano, 48 N. Y. 326. In addition to the fact that Jennie F. Dunn had ac- tual notice of the deed to her brother Edward E. Dunn, she was not a pur- chaser in good faith and for value. Therefore she cannot hold as against the prior conveyance in so far as the prior conveyance was acknowledged or attested by a witness. To entitle a subsequent purchaser of real estate to the benefit of the recording act, he must not only first record his conveyance, but he must be a purchaser in good faith and for a valuable consideration. De Lancey v. Stearns, 66 N. Y. 157; Fries v. N. Y. & H. R. R. Co., 57 App. Div. 577, 68 N. Y. Supp. 670.

[2] The consideration of $1 expressed in the deed to Jennie F. Dunn, though actually paid to each grantor, was insufficient to make her a pur- chaser for a valuable consideration. Ten Eyck v. Whitbeck, 135 N. Y. 40, 31 N. E. 994, 31 Am. St. Rep. 809.

[3] We now come to the question of the legal effect of the unacknowledged and unattested deed from Maria Parmalee to Edward E. Dunn. It has long been the law in this state (1 R. S. p. 738, § 137) that "a grant in fee or of a freehold estate, must be subscribed by the person from whom the estates or interest conveyed is intended to pass, or by his lawful agent. If not duly acknowledged before its delivery, according to the provisions of this chapter, its execution and delivery must be attested by at least one witness, or, if not so attested, it does not take effect as against a subsequent purchaser or incumbrancer until so acknowledged." This provision of the Revised Stat- utes was re-enacted in Real Property Law (Laws 1896, c. 547) § 208. It was re-enacted in the Real Property Law (Laws 1909, c. 52 [Consol. Laws 1909, c. 50] p. 3417) § 243.

When the deed from Maria Parmalee to Jennie F. Dunn was executed and recorded, the deed from Maria Parmalee to Edward E. Dunn was unacknowl- edged and unattested. It was therefore invalid as against Jennie F. Dunn, the said subsequent grantee. It was invalid, even though Jennie F. Dunn had actual notice of the prior deed, and even though she was not a purchaser in good faith and for value. Chamberlain v. Spargur, 86 N. Y. 603. It fol- lows that Jennie F. Dunn, the plaintiff, is the owner of an undivided one- twenty-fourth share or interest in the land described in the complaint.

[4, 5] The deed from Augusta E. M. Dunn to Edward E. Dunn should be set aside. There is no reason in justice or in equity why it should be sustain- ed. At the time the deed was executed it was well known and fully under- stood by both parties to the conveyance that she was the owner of an undi- vided eighteen twenty-fourths share or interest, and he was the owner of five twenty-fourths. In making the partition and division there was no rea- son why he should get more than his just proportion of the amount and value of the land, and yet he did get nearly one-half of the amount and more than half of the value. This result came about because Edward E. Dunn de- ceived his mother, who relied upon his repeated statements and representa- tions that the proposed division was fair and just, and that he was only

getting a little more than one-fourth. He now claims that he was mistaken as to the relative amounts in the two parcels. One trouble with this excuse is that the injury and injustice to his mother is just the same whether his misrepresentations were willfully and intentionally false or not. The undisputed fact remains that she relied upon his statements and representations, and was thereby woefully deceived and cheated. From the whole evidence it seems clear that this conveyance should be set aside.

The land in question is a long narrow tract extending from the Delaware river south onto the mountain a distance of about two miles. A small portion along the river is cultivated upon which is an old house and a small barn. Here Augusta E. M. Dunn and her husband lived for a number of years and until his death in 1899. Their son the defendant Edward E. Dunn lived there with his father and mother as a boy and until his marriage in 1886. The mother knew very little, if anything, about the back portion of the tract. The defendant Edward E. Dunn had cut wood and ties upon the premises. About the year 1900 he assisted in surveying the line between the Dunn lot in question and the Humphrey lot in order to determine the location of the division line, and was well acquainted with the land and the location of the boundaries.

A short time prior to June 17, 1903, he employed Henry Simpson, a surveyor, to survey a line dividing the tract from north to south. The surveyor, with the assistance of Edward E. Dunn, surveyed the line, and thereby divided the tract into an easterly and a westerly portion. He pointed out to the surveyor where he wanted the line located. The surveyor made a diagram and description of the westerly portion as thus surveyed. It will be remembered that about a year or two before this time the same surveyor with Edward E. Dunn surveyed and located the Humphrey lot, so called, and which is located west of and adjoining the Dunn tract, and was formerly a part of the Dunn or Wooster tract. There is no doubt but what Edward E. Dunn knew very well when he was having the dividing line surveyed for a division between himself and his mother that the Humphrey lot had been sold off, and he knew where the Humphrey line was. Notwithstanding this knowledge, he caused the surveyor to locate the line between himself and his mother where he would get nearly one-half of the land and more than half of the value. On the 17th day of June, 1903, he took this diagram and description of the westerly portion to Port Jervis, where his mother was then temporarily residing. He arrived at her home in the forenoon, and procured from her the old deed of the entire tract, and told her he was going to have a deed drawn for a division. He then employed an attorney at law at Port Jervis who prepared a deed conveying the easterly portion to Augusta E. M. Dunn, but did not have his wife join in the conveyance. The attorney also prepared a deed from Augusta E. M. Dunn to Edward E. Dunn of the westerly portion, using the description made from the survey by Henry Simpson and Edward E. Dunn. Edward E. Dunn then returned to his mother's residence with the attorney and requested her to execute the deed. She objected to doing so, and said that she knew nothing about it. He represented and stated to her repeatedly that it was all right, that he was getting only a little over one-fourth. He and his attorney remained two hours or more, and he continued to urge her to execute the paper. He told her that he had had it surveyed, and that she was getting by the proposed division five hundred acres; that the barn was on her portion and also the spring. She finally requested him to wait until her daughter, Jennie F. Dunn, should return. When the daughter came, he said he had deeds for a division, and that he was getting a little more than one-fourth; that he had it surveyed and his mother's part was 500 acres; and that he would not take anything but what was right. After the various statements and representations by Edward E. Dunn that the deeds were correct and made a fair and just division, Augusta E. M. Dunn executed the deed to him, and received the other deed of the easterly portion. As a matter of fact the deed to Edward E. Dunn conveyed to him 295 acres, and the deed from him to his mother conveyed about 322 acres. The portion conveyed to him contained a large part of the timber, and was the most valuable. It gave him about three-fourths of the frontage on

the river. The spring and barn, instead of being on the mother's part, were on the part conveyed to him. He admits that he told his mother the deeds were all right, and that he was only getting a little more than one-fourth, and that he urged her to execute the deed to him. He admits that he misrepresented the amount of land which he would get, but says that he did not intend to do so. Thereafter a quantity of timber was sold off and three-fourths of the proceeds were paid to his mother and one-fourth was paid to him. When the mother learned that she had been induced to convey much more than she supposed or intended to convey, she protested to him, and brought a suit to have the deed set aside. And while he admits that he misrepresented the facts to his mother, and thereby induced her to convey more than she ever intended to convey, and more than she should have conveyed, still he never offered to reconvey or make restitution for the admitted wrong, and thereby clearly indicating that he intended to do just what he did do. Under all these circumstances and conditions, his claim that he did it under an honest mistake cannot be accepted.

At the time the deeds were executed she was 69 years of age and he was 44. While they had both lived on the premises for a number of years, she knew substantially nothing about the conditions and boundary line on the back portion. He had helped to locate the line of the Humphrey lot and had worked in the woods and was familiar with the whole tract, and she had good reason to trust and rely upon him in the matter. The confidential relations between them were such that she was justified in reposing faith in what he said. She was informed that he and Mr. Simpson had surveyed it for the purpose of a division, and she was led to believe that he knew the facts and conditions, and she had the right to believe that what he told her was true. Under such circumstances and conditions, the burden of proof was upon him to show affirmatively that the transaction was fair and honest, and that no advantage was taken by him. Barnard v. Gantz, 140 N. Y. 249, 35 N. E. 430; Nesbit v. Lockman, 34 N. Y. 167; Cowee v. Cornell, 75 N. Y. 99, 31 Am. Rep. 428.

[6] Even assuming that the conveyance was a mistake on the part of Edward E. Dunn which assumption cannot be indulged in in this case, the conveyance was a fraud upon the rights of the mother and should be set aside. The division actually made was so different from the one intended, and so materially detrimental to Augusta E. M. Dunn, all of which was induced by the misrepresentations of Edward E. Dunn, a court of equity should not deny relief, even though the misrepresentations were made by him under a misapprehension of the facts. Courts of equity may give relief in cases of mutual mistake unaccompanied by fraud where the subject of the conveyance is so materially variant from what the parties supposed it to be that the substantial object of the conveyance has failed. Stevens v. Melcher, 152 N. Y. 575, 46 N. E. 965; Dale v. Roosevelt, 5 Johnson Ch. 174; Beardsley v. Duntley, 69 N. Y. 577.

It has also been held that where the owner of a farm innocently but untruly states the quantity of land contained therein, and a purchaser in reliance upon the statement enters into a contract and takes a deed, and subsequently discovers that the quantity is materially less than that stated, he is entitled to the interposition of a court of equity to correct the mistake, and the court will set aside or reform the deed as may best suit the particular case. Paine v. Upton, 87 N. Y. 327, 41 Am. Rep. 371.

The facts and circumstances of this case are sufficient, however, to require the setting aside of the deed without regard to the confidential relations which existed between Augusta E. M. Dunn and her son. From the whole case it is clear that a court of equity should interpose and right this serious wrong so far as possible, and set aside the deed from Augusta E. M. Dunn to Edward E. Dunn as fraudulent and void, together with the conveyance from him to her, and let the parties be restored to their rights as though the deeds had never been executed.

Argued before SMITH, P. J., and KELLOGG, HOUGHTON, and BETTS, JJ.

E. D. Cumming, for appellant.

Wesley Gould, for respondent Jennie F. Dunn.

Lewis G. Carpenter (Charles L. Andrus, of counsel), for respondent Augusta E. M. Dunn.

Charles L. Andrus, for respondent Crandall.

PER CURIAM. Judgment affirmed, with costs on the opinion of the referee. All concur, except KELLOGG, J., who favors a reversal as to the plaintiff.

---

BELDEN v. BROWN et al.

(Supreme Court, Special Term, New York County. June 12, 1912.)

1. PLEADING (§ 352*)—SERVICE—TIME.

Whether an answer has been served within 20 days of the trial is a question that can be determined only by the trial judge when the case comes on for trial, and hence cannot be considered as a ground of motion to strike the answer.

[Ed. Note.—For other cases, see Pleading, Cent. Dig. §§ 1078–1091, 1125; Dec. Dig. § 352.*]

2. PLEADING (§ 149*)—ANSWER—DEFAULT—CROSS-COMPLAINT.

That a defendant had not served any notice of trial, and was in default in appearing and pleading to the complaint, when he served his cross-complaint against codefendants, were matters of which such codefendants could not take advantage.

[Ed. Note.—For other cases, see Pleading, Cent. Dig. §.301; Dec. Dig. § 149.*]

3. PLEADING (§ 149*)—ANSWER BY CODEFENDANT.

Plaintiff, as assignee of H., sued on a contract with defendants B., who answered that the contract had been canceled without any knowledge on their part of plaintiff's interest, and a new contract entered into which declared that it was in substitution of all former agreements. Plaintiff, after examination of defendants B. before trial, moved for leave to serve an amended complaint setting up the second agreement, and this being denied, on the ground that it would change the theory of plaintiff's cause of action, defendant H., who was in default, under a stipulation signed by plaintiff, answered setting up the second contract and praying judgment against defendants B. for the amount claimed to be due thereunder. Held, that such answer set up a new cause of action not connected with the issues raised between plaintiff and defendants B., and was therefore not authorized by Code Civ. Proc. § 521, authorizing an answer and determination of rights of codefendants as between themselves, etc.

[Ed. Note.—For other cases, see Pleading, Cent. Dig. § 301; Dec. Dig. § 149.*]

Action by James Belden against Walston H. Brown and another, doing business under the name of Walston H. Brown & Bros., and Joseph J. Henry. On motion to set aside service of the answer of defendant Henry. Granted.

See, also, 142 App. Div. 938, 127 N. Y. Supp. 1111.

Joline, Larkin & Rathbone, of New York City (Albert Stickney, of New York City, of counsel), for the motion.

Wollman & Wollman, of New York City, opposed.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes