THE CITY OF NEW YORK, Appellant, *v.* THE NEW YORK AND SOUTH BROOKLYN FERRY AND STEAM TRANSPORTATION COMPANY, Respondent.

Corporations — real property — dissolved corporation may still be sued for debt or obligation existing at time of its dissolution — grant by corporation of easement in land with reservation of right to terminate same upon payment for improvements — sale of land with covenant against incumbrances — when easement not extinguished by failure to acknowledge or attest grant — covenant not restricted to incumbrances unknown to grantee.

1. The words "debts or obligations," contained in section 57 of the Stock Corporation Law (L. 1900, ch. 760), which, though authorizing dissolution of a corporation, continues its existence "for the purpose of paying, satisfying and discharging any existing debts or obligations," and provides that "for the purpose of enforcing such debts or obligations" the corporation may sue and be sued "until its affairs are fully adjusted and wound up," are as broad as the word "liabilities." The legislature did not mean that a privilege to dissolve at the pleasure of the stockholders should become a privilege, at the like pleasure, to change the course of distribution. Liabilities are to be paid and the liquidator is to pay them.

2. Defendant, a ferry corporation, granted to a street railroad the use of certain land at its terminal upon the latter's agreement to move and rebuild the ferry house, which it did at large cost, but the grantor reserved the right, upon notice and repayment to the grantee of the cost of moving and rebuilding, to terminate the grant. Thereafter the grantor sold its terminal to the city and by consent of the directors and stockholders, without action of the court, dissolved the corporation. The railroad thereafter made claim and collected from the city compensation as holder of an easement. In this action by

the city to recover from the ferry corporation for breach of its covenant that the premises conveyed were " free from incumbrances," *held,* that a debt or obligation existed upon the part of the defendant when it was dissolved and that it is still liable to suit notwithstanding its dissolution.

3. A contention that the grant of the easement was imperfect for the reason that it was neither acknowledged nor attested and that consequently as to the city, a subsequent purchaser, the easement was extinguished by the purchase (Real Prop. Law. § 243), cannot be sustained. The railroad's entry was accompanied by valuable improvements upon the faith of the defendant's covenant and in performance of its own. In equity, its rights were equivalent to those of ownership and no purchaser with notice would be suffered to ignore them. The imperfect deed might be disregarded but not the equities behind it.

4. Nor is a covenant against incumbrances restricted to incumbrances unknown to the grantee when accepting the conveyance. The covenant is an assurance that what is asserted by the claimant to be a right is, in truth, a delusion or a pretense. (*Nellis* v. *Munson,* 108 N. Y. 453; *Chamberlain* v. *Spargur,* 86 N. Y. 603, distinguished.)

*City of New York* v. *New York & South Brooklyn Ferry & Steam Transportation Co.,* 190 App. Div. 939, reversed.

(Argued February 1, 1921; decided April 19, 1921.)

APPEAL from a judgment of the Appellate Division of the Supreme Court, in the first judicial department, entered February 6, 1920, affirming a judgment in favor of defendant entered upon a verdict directed by the court.

*John P. O'Brien, Corporation Counsel* (*John F. O'Brien* and *Josiah A. Stover* of counsel), for appellant. Defendant's covenant against incumbrances has been violated. (*Matter of City of New York [39th Street Ferry],* 76 Misc. Rep. 358; 150 App. Div. 908; 206 N. Y. 655.) A corporation may not voluntarily dissolve until it has paid or adequately provided for the payment of its debts and obligations. An action lies against a corporation after the filing of a certificate of dissolution in the office of the secretary of state, if, at the time of filing such certificate, an obligation existed against it. (L. 1900, ch. 760, § 57; *Tapley Co.* v. *Keller,* 133 App. Div. 54; *Cunningham* v. *Glauber,* 133 App. Div. 10; *Met. Tel. Co.* v. *Met. Tel. Co.,*

156 App. Div. 577; *Sinnott* v. *Hannan,* 214 N. Y. 454; *Buell* v. *B. & O. S. W. Ry. Co.,* 39 App. Div. 236; *Olmstead* v. *D: & C. F. Co.,* 73 Fed. Rep. 44; *People* v. *Nat. Trust Co.,* 82 N. Y. 283.) An obligation to pay $83,545.38 to the Brooklyn City Railroad Company or nominal damages, which later became merged into substantial damages for $83,545.38, to the city of New York existed against defendant when it attempted to dissolve on March 24, 1908. (*Thorn* v. *Hall,* 10 App. Div. 412; *Crandall* v. *Bryan,* 15 How. Pr. 48; *Met. Tel. Co.* v. *M. T. Co.,* 156 App. Div. 577; *Marstaller* v. *Mills,* 143 N. Y. 398; *Karasik* v. *People's Trust Co.,* 252 Fed. Rep. 324; *Riggin* v. *Maguire,* 15 Wall. 459; *Geiszler* v. *De Graaf,* 166 N. Y. 339.)

*George Zabriskie* for respondent. The corporation named as defendant was dissolved in March, 1908, and when this action was commenced in February, 1917, it was, and is, totally extinct and incapable of being sued. (*Matter of Stewart,* 39 Misc. Rep. 275; 86 App. Div. 627; 177 N. Y. 558; *Martyne* v. *Am. Union Fire Ins. Co.,* 216 N. Y. 183; *People* v. *Ballard,* 134 N. Y. 269.) The term " existing debts or obligations," in section 57 of the Stock Corporation Law, upon which a corporation after dissolution has still power to sustain suit, means debts existing at the time of dissolution. (*Strong* v. *Wheaton,* 38 Barb. 616; *Kepner* v. *United States,* 195 U. S. 100, 124; *Wentworth* v. *Whittemore,* 1 Mass. 471; *V. W. Printing Co.* v. *Beecher,* 26 Hun, 48; 97 N. Y. 651; *Guaranty Trust Co.* v. *G. C. R. R. Co.,* 107 Fed. Rep. 311; *N. Y. L. Ins. Co.* v. *U. L. Ins. Co.,* 88 N. Y. 424; *Matter of Adams,* 12 Daly, 454; *Rector, etc.,* v. *Vanderbilt,* 98 N. Y. 170; *Oviatt* v. *Hughes,* 41 Barb. 541; *Dresser* v. *Johns,* 6 C. B., N. S., 429; *Matter of Charles,* 14 East, 198; *Dunn* v. *Neustadtl,* 72 Misc. Rep. 1, 5; *Hill* v. *Weidinger,* 110 App. Div. 683.) The plaintiff's demand in this suit was not an existing debt or obligation of the defendant at the time of its dissolution. (*Dela-*

*vergne* v. *Norris*, 7 Johns. 358; *Hall* v. *Dean*, 13 Johns. 105; *McGuckin* v. *Milbank*, 152 N. Y. 297; *Stearn* v. *Hersdorfer*, 9 Misc. Rep. 134; *Van Slyck* v. *Kembal*, 8 Johns. 198; *Stanard* v. *Eldridge*, 16 Johns. 254; *De Forest* v. *Leete*, 16 Johns. 122; *Chace* v. *Hinman*, 8 Wend. 452; *Aberdeen* v. *Blackmar*, 6 Hill, 324; *Halsey* v. *Reed*, 9 Paige, 446; *Gilbert* v. *Wyman*, 1 N. Y. 550; *Rector, etc., of Trinity Church* v. *Higgins*, 48 N. Y. 532.)   The instrument creating the supposed incumbrance is the agreement between the ferry company and the Brooklyn City Railroad Company dated August 22, 1892.   That agreement, as appears on its face, was neither witnessed nor acknowledged.   As the agreement was neither acknowledged nor subscribed by a witness, the situation is directly within the scope of the statute, and the subsequent deed from the defendant to the city conveyed the premises free from any incumbrance created by the instrument of August 22, 1892.   (*Chamberlain* v. *Spargur*, 86 N. Y. 603; *Nellis* v. *Munson*, 108 N. Y. 453; *Dunn* v. *Dunn*, 151 App. Div. 800.)

CARDOZO, J.   The defendant owned and operated a ferry between the boroughs of Manhattan and Brooklyn in the city of New York.   By agreement, dated August 22, 1892, it gave to the Brooklyn City Railroad Company the use of a space, one hundred feet square, for a car stand and for switching purposes at its Brooklyn terminal. The grantee undertook to move and rebuild the ferry house to another part of the land, and carried out its' undertaking at a cost of $83,545.38.   The grantor reserved the right, upon notice of six months, and upon payment to the grantee of the cost of moving and rebuilding, to terminate the grant.

The situation stood unchanged until June, 1906, when the city of New York began proceedings to condemn and appropriate the terminal for the improvement of the water front.   Commissioners of estimate were appointed.

The defendant, without waiting for their award, transferred the terminal to the city in December, 1906, by voluntary sale. The price, $750,000, was paid by the city for a conveyance with full covenants.

The defendant, having parted with its ferry and distributed its assets, determined ·to dissolve. Dissolution was effected in March, 1908, by consent of the directors and stockholders without the action of the court (L. 1900, ch. 760; formerly section 57 of the Stock Corporation Law; now section 221 of the General Corp. Law; Consol. Laws, chap. 23). Litigation between the railroad company and the city was even then in progress. The railroad company made claim to compensation as the holder of an easement. The city, contesting the claim, asserted that the easement had been cut off by the conveyance, and that the right of action for damages was not a charge upon the *res.* The controversy ended, after many years of litigation, by the recognition of the claimant's title (*Matter of City of New York*, 76 Misc. Rep. 358; 150 App. Div. 908; 206 N. Y. 655, decided June 29, 1912). On January 25, 1913, the city paid to the railroad company $91,482.19, ($83,545.38 with accrued interest) as the price of the extinction of an easement then a burden upon the land.

This action is brought to recover damages for breach of the defendant's covenant that " the said premises " were " free from incumbrances " at the time of the conveyance. The statute under which the defendant was dissolved, continues the corporate existence " for the purpose of paying, satisfying and discharging any existing debts or obligations," and provides that " for the purpose of enforcing such debts or obligations," the corporation may sue and be sued " until its business and affairs are fully adjusted and wound up " (L. 1900, ch. 760; then section 57 of the Stock Corp. Law; now section 221 of the Gen. Corp. Law). Judgment has gone against the plaintiff on the ground that no debt or obligation existed when the defendant was dissolved.

We think that " debts or obligations," within the purview of this statute, are as broad as " liabilities."   No doubt they have a narrower meaning at some times and in some contexts (*Munzinger* v. *United Press*, 52 App. Div. 338).  Justice and reason and the analogy of kindred statutes must fix the limits of extension (*Jacobs* v. *Monaton R. I. Corp.*, 212 N. Y. 48, 54).  The legislature did not mean that a privilege to dissolve at the pleasure of the stockholders should become a privilege at the like pleasure to change the course of distribution.   This statute speaks of the payment and enforcement of " debts or obligations."   Another, applicable to corporations of the same class, says that dissolution shall not affect the remedy for " liabilities " previously incurred (Business Corporations Law, sec. 5; Consol. Laws, ch. 4).   Another says that the directors, in the event of dissolution, shall be chargeable as trustees for " creditors " (Gen. Corp. Law, sec. 35).   These statutes and others like them (Gen. Corp. Law, secs. 191, 261, 156) are to be construed together (*Marstaller* v. *Mills*, 143 N. Y. 398).   In varying phraseology, they embody the same thought.   " Liabilities " are to be paid (*Marstaller* v. *Mills, supra; Shayne* v. *Evening Post Pub. Co.*, 168 N. Y. 70), and the liquidator is to pay them.   It makes no difference whether they have their origin in contract or in tort (*Marstaller* v. *Mills; Shayne* v. *Evening Post Pub. Co., supra*).   It makes no difference whether the liquidator is court or corporation, receiver or director.   Distribution does not vary with the title of the statute.

The defendant's liability is not only a " debt or obligation; " it is a debt or obligation that existed when the corporation was dissolved.   This is not the case of a mere money incumbrance which leaves possession undisturbed (*Delavergne* v. *Norris*, 7 Johns. 358; *McGuckin* v. *Milbank*, 152 N. Y. 297; Rawle Covenants for Title, secs. 190, 191; 3 Sedgwick Damages [9th ed.], secs. 968, 970).   The remedies then open, we need not now consider.

This is the case of an incumbrance that in itself is an eviction (*Scriver* v. *Smith,* 100 N. Y. 471; *Harrington* v. *Bean,* 89 Me. 470), the incumbrancer already in possession, with encroaching sheds and switches. No rule of law limits the covenantee in such conditions to an award that is merely nominal (*Huyck* v. *Andrews,* 113 N. Y. 81; Rawle Covenants for Title, *supra;* Sedgwick Damages, *supra*). The damages may be measured by the difference between the value of the land without the servitude and with it (*Huyck* v. *Andrews, supra; Harrington* v. *Bean, supra; Harlow* v. *Thomas,* 15 Pick. 66, 69; *Richmond* v. *Ames,* 164 Mass. 467, 476; *Bailey* v. *Agawam Nat. Bank,* 190 Mass. 20, 25). They may be measured by the moneys reasonably expended by the owner in freeing the land and extinguishing the burden (*Prescott* v. *Trueman,* 4 Mass. 627; *Bailey* v. *Agawam Nat. Bank, supra;* 3 Sedgwick Damages, secs. 967, 979; *McGuckin* v. *Milbank, supra*). Such payments are not inadmissible as evidence of damage because made after action brought (*Brooks* v. *Moody,* 20 Pick. 474; *Johnson* v. *Collins,* 116 Mass. 392, 394; *Tibbetts* v. *Leeson,* 148 Mass. 102, 104; *Mosely* v. *Hunter,* 15 Mo. 322, 330; *Potter* v. *Taylor,* 6 Vt. 676). They do not change the cause of action (*Tibbetts* v. *Leeson, supra.* Cf. *Child* v. *Stenning,* L. R., 11 Ch. D., 82, 85). They are merely means and methods for the ascertainment of the loss. Dissolution or bankruptcy does, indeed, draw a dividing line as the result of accidents of time between claims capable of being proved, and those required to be rejected. The principle of division, however, is not the fact of liquidation. The principle of division is the existence of a present right to liquidate (Business Corporations Law, sec. 5; *Marstaller* v. *Mills, supra;* and cf. *Wood* v. *Fisk,* 215 N. Y. 233, 240; *Williams* v. *U. S. F. & G. Co.,* 236 U. S. 549, 556).

We hold, therefore, that the defendant is still liable to suit. Whether the distribution of its assets in advance of dissolution may make a judgment, if recovered, futile,

we do not now consider.   Upon the record now before us, that question is not here.   The collection of the judgment must wait upon its entry.   If the defendant is right, this action would have to fail though the assets were still intact and in the possession of the liquidator. The fund in that view is to be reserved for claims already liquidated.   The law, as we read it, does not discriminate so partially in behalf of favored classes.

Immunity from suit failing, the defendant contests the merits.   A grant in fee or of a freehold estate " does not take effect as against a subsequent purchaser," even though a purchaser with notice (*Nellis* v. *Munson*, 108 N. Y. 453; *Chamberlain* v. *Spargur*, 86 N. Y. 603), unless the grant is acknowledged or unless " its execution and delivery " are " attested by at least one witness " (Real Property Law, sec. 243; Consol. Laws, ch. 50).   The grant of this easement was neither acknowledged nor attested. The secretaries of the two corporations " signed their names as part of the execution of the instrument," each for his own principal, " and not to attest an execution already completed " (*Deffell* v. *White*, L. R., 2 C. P., 144; *Doe* v. *Chambers*, 4 A. & E. 410).   Delivery, as well as signature, must be attested, to satisfy the statute (Real Prop. Law, sec. 243).   Since the grant is imperfect, and the city a subsequent purchaser, the easement, it is said, was extinguished by the purchase; the incumbrance is illusory; the breach of covenant unreal.

We think the equities arising from contract, possession and improvement are not so easily destroyed.   The statute nullifies the instrument of transfer considered as a formal grant, but it does not nullify rights and interests which would be maintained and protected irrespective of a grant.   The railroad was not outlawed in taking an imperfect deed.   Its plight is surely no worse than if it had taken no deed at all, but had gone into possession under an oral agreement that it would receive a deed thereafter.   Its entry was accompanied by valuable

improvements, the moving and rebuilding of the ferry house, upon the faith of the defendant's covenant and in performance of its own. In equity, its rights were equivalent to those of ownership (*Young* v. *Overbaugh*, 145 N. Y. 158, 160; *Messiah Home for Children* v. *Rogers*, 212 N. Y. 315; *McKinley* v. *Hessen*, 202 N. Y. 24; *Woolley* v. *Stewart*, 222 N. Y. 347). No purchaser with notice would be suffered to ignore them. The imperfect deed might be disregarded, but not the equities behind it. We find nothing to the contrary in *Chamberlain* v. *Spargur* and *Nellis* v. *Munson* (*supra*). All that they decide is the effect of notice when restricted to the deed and nothing else. The question is distinctly reserved in *Nellis* v. *Munson* (108 N. Y. at pp. 461, 462), whether different effect may not be given to notice of extrinsic equities. That question is now here. Possession and improvements are effective against subsequent purchasers if the possessor of the land is there without a deed. We find it inconceivable that they should be ineffective, in like circumstances of notice, when he is there with an imperfect deed.

There remains one other question, suggested, not by counsel, but by members of the court. A covenant against incumbrances must be restricted, it is said, to incumbrances unknown to the grantee when accepting the conveyance. Such is not the law as our decisions have declared it (*Callanan* v. *Keenan*, 224 N. Y. 503, 508; *Pryor* v. *City of Buffalo*, 197 N. Y. 123, 136; *Huyck* v. *Andrews*, 113 N. Y. 81). The value of covenants of title would be seriously impaired if their operation could be limited by notice, actual or constructive, of the presence of a hostile right (*Huyck* v. *Andrews, supra,* at p. 90). The claim is offset by its negation. The covenant is an assurance that what is asserted by the claimant to be a right is in truth a delusion or a pretense. The city took the defendant at its word. It contested the hostile claim. It carried the controversy to this court in the effort to prevail (206 N. Y. 655). Now, worsted in the

fight, it falls back on the assurance of indemnity. We think the promise must be redeemed.

The judgment should be reversed, and a new trial granted, with costs to abide the event.

McLAUGHLIN, J. (dissenting).   This action was brought to recover damages for the alleged breach of a covenant against incumbrances contained in a deed of conveyance from the defendant to the plaintiff. The material allegations of the complaint are that the defendant, a domestic corporation, on December 21, 1906, in consideration of $750,000, conveyed to the plaintiff certain lands in the city of New York; that by the deed of conveyance the defendant covenanted that the lands conveyed were free from incumbrances; that at the time of the delivery of the deed the lands were not free from incumbrances, but were subject to the lien of a lease made August 22, 1892, between the defendant and the Brooklyn City Railroad Company; that in condemnation proceedings subsequently taken by the plaintiff it was determined the interest of the railroad company in said lands was $83,545.33, with interest, which amount the plaintiff was obliged to and did pay and for which sum judgment was demanded, an action at law and nothing else. The answer denied the allegation that there had been a breach of the covenant against incumbrances and set up certain affirmative defenses which, in the view I take of the question presented by the appeal, it is unnecessary to consider. At the trial a verdict was directed for the defendant dismissing the complaint. Judgment was entered to this effect, which was affirmed by the Appellate Division, one of the justices dissenting, and an appeal to this court followed.

The sole question presented by the appeal is whether the evidence adduced at the trial showed there had been a breach of the covenant as alleged in the complaint, or the jury would have been justified in so finding. A care-

ful consideration of the record has satisfied me that the evidence did not establish such breach and the jury would not have been justified in finding to the contrary. This was the position, among others taken by the defendant at the trial and on the argument of the appeal. The appellant, however, contends that the agreement between the defendant and the Brooklyn City Railroad Company, dated August 22, 1896, which was in force when the deed was delivered, constituted an incumbrance. Whether this contention be well founded necessitates a brief reference to the agreement.

The agreement, in substance, grants to the railroad company a limited right of way on a parcel of land 100 feet square for the purpose of storing cars thereon and for switching purposes, and specifically provides that " The said use shall be as follows, to wit: The party of the first part shall have the privilege of laying its tracks upon said last described plot of land and of using the same for a car stand for its passenger cars and as a switching place for its passenger cars and for the general purpose of securing convenient transit or passage for its passengers between the cars and ferry house.   *   *   *."

According to the terms of the instrument the privilege thus granted could be terminated in two ways: (a) By the railroad company discontinuing carrying passengers to this point; (b) by the ferry company giving to the railroad company six months' written notice of an intention to terminate, and by paying to it the amount expended in removing the ferry house from the 100-foot plot to a new site. (The amount thus paid was stipulated by the ferry company and the railroad company at the time the ferry house was moved or shortly thereafter to be " $83,545.38," and that was the amount, with interest, the city had to pay to the railroad company in the condemnation proceeding.) The right acquired under the agreement by the railroad company was in the nature of an easement running with the land. It was a grant in

fee or of a freehold estate.   (Real Property Law [Cons. Laws, ch. 50], sec. 33; *Nellis* v. *Munson,* 108 N. Y. 453.) It could only be extinguished by the happening of one or both of the events stated.   The deed from the defendant to the city was dated December 21, 1906.   It was duly acknowledged and could have been recorded immediately after delivery.   The agreement between the railroad company and the ferry company was not acknowledged, nor its execution attested by a subscribing witness.   This is conceded in the prevailing opinion and the authorities there cited fully sustain this conclusion.   The city, therefore, as between it and the ferry company, notwithstanding the agreement, obtained a title free from incumbrances.   The Real Property Law provides:

"Section 243.  Grant of fee or freehold.  A grant in fee or of a freehold estate, must be subscribed by the person from whom the estate or interest conveyed is intended to pass, or by his lawful agent.  If not duly acknowledged before its delivery, according to the provisions of this chapter, its execution and delivery must be attested by at least one witness, or, if not so attested, it does not take effect as against a subsequent purchaser or encumbrancer until so acknowledged."

In *Chamberlain* v. *Spargur* (86 N. Y. 603, 607) an action was brought to set aside conveyances and leases under which defendants claimed, as clouds upon plaintiff's title.  The original owner of the lands subscribed, but did not acknowledge, a deed thereof under which the plaintiff claimed.  Such owner subsequently executed deeds and leases properly acknowledged under which defendant claimed.  It was held that the defendant had good title and the complaint was dismissed.  Judgment to this effect was affirmed by this court.  Judge Finch, who delivered the opinion of the court, said: "The grantor who has signed a deed, unattested and unacknowledged, is left with the power of effectively conveying by a later deed properly executed.  The party who has taken the

imperfect instrument does so at his peril, and with eyes open to the consequences. The grantor may, nevertheless, convey, and it matters not upon what consideration or for what purpose. That concerns him alone. The contrary construction would make the unattested and unacknowledged deed quite as good as the perfect and regular one, while the latter remained unrecorded. Each alike would yield only to the rights of the innocent purchaser, obeying the requirements of the law.  *  *  * We have thus no difficulty in construing the statute literally and just as it reads."

In *Nellis* v. *Munson* (*supra*) an action was brought to restrain the defendant from interfering with a pipe laid across his premises to conduct water to the plaintiff's premises. The easement had been created by an agreement, not then witnessed or acknowledged. After making the agreement the owner of the premises contracted to sell the same, excepting the privilege given to the plaintiff; but she conveyed the premises by a warranty deed without mentioning the plaintiff's easement. After the conveyance the grant of the easement was acknowledged by the grantor. Subsequently the premises were conveyed to the defendant by warranty deed containing no mention of the easement, but the defendant knew of plaintiff's rights and the existence of the pipe before he purchased. This court, reversing a judgment in favor of plaintiff, said: " We are therefore of the opinion that the easement conveyed was an estate in fee, and required for its conveyance a deed, executed in the manner prescribed by the statute, to affect the right of a subsequent purchaser. We are much impressed with the apparent equities of the plaintiff's claim, in view of the fact that the subsequent grantees of the servient estate took title with notice of the easement claimed by the plaintiff, but we see no way of escaping the effect of the plain words of the statute." (p. 461.)

In *Dunn* v. *Dunn* (151 App. Div. 800, 804) the execution

and delivery of an earlier deed were never attested by a witness. It was, however, after the later deed had been executed and recorded, and the court held: " It was, therefore, invalid as against Jennie F. Dunn, the said subsequent grantee. It was invalid even though Jennie F. Dunn had actual notice of the prior deed, and even though she was not a purchaser in good faith and for value."

It is quite immaterial and beside the question that the city in accepting the conveyance from the ferry company in December, 1906, had notice and actual knowledge of the right or easement granted to the railroad company by the agreement of 1892. The effect of the later conveyance was to vest in the city the *entire fee* of the premises conveyed free and clear of the easement created in favor of the railroad company by the earlier instrument. It follows, therefore, that the premises were conveyed without incumbrances.

But it is said, not by counsel, " that the equities arising from contract, possession and improvement " cannot, because there is no breach of the covenant against incumbrances, be similarly disposed of; that while " the statute nullifies the instrument as a formal grant * * * it does not nullify rights and interests which would be maintained and protected irrespective of the grant; " that in equity the rights of the railroad were equivalent to those of ownership and a purchaser with notice would not be permitted to ignore them.

There are, as it seems to me, two answers to the suggestions thus made: (1) The action, as we have seen, is one at law. The plaintiff must stand or fall upon the platform he has constructed. He cannot leave that and go to another. Having brought the action at law, he must recover upon that theory or not at all. This is the issue raised by the pleadings. It is the theory upon which the action was tried and the appeal argued. (2) A recovery upon that ground is contrary to the rule laid down in *Chamberlain* v. *Spargur (supra)* and *Nellis* v.

*Munson (supra).* It may be that the railroad company would have had a right of action against the ferry company for the destruction of its rights under the agreement, but even so the situation is in nowise changed. The fact remains that the city got a good conveyance of the entire title free from incumbrances. It, therefore, had no right of action against the ferry company upon the theory that the railroad company had some equities which had been destroyed by the conveyance. The city in fact knew as much about the rights of the railroad company as the ferry company did. It had been served by the railroad company with a written notice of its claim and the amount thereof, prior to the time the conveyance was made. Indeed, it had been served with a copy of the agreement and it knew precisely what the railroad had and what it claimed before the deed was delivered. Under such circumstances it is difficult to see how it is in a position to ask a court of equity to exercise its powers to relieve it from what it had to pay the ferry company in the condemnation proceeding. That award was made upon the theory that the city, by the conveyance to it, took the place of the ferry company, and the right of the railroad company could not be wiped out until it had been paid for the improvements which it had put upon the property. (*Matter of City of New York*, 76 Misc. Rep. 358; affd., on opinion below, 150 App. Div. 908; affd., 206 N. Y. 655.)

The foregoing views render it unnecessary to pass upon the other questions raised by the appeal.

I, therefore, dissent and vote to affirm the judgment appealed from.

HISCOCK, Ch. J., HOGAN and POUND, JJ., concur with CARDOZO, J.; CRANE and ANDREWS, JJ., concur with McLAUGHLIN, J.

Judgment reversed, etc.