OPINION OF THE COURT
Paula L. Feroleto, J.
The plaintiffs have moved for partial summary judgment seeking a sale of certain real property located in Fredonia, New York, and dismissing the affirmative defense of the defendant, Thomas Pacos.
The defendant Thomas Pacos has opposed the motion and moved by notice of cross motion for dismissal of the plaintiffs’ summons and complaint which seeks a sale of the real property.
Facts
The plaintiffs and defendant are siblings. On December 22, 1996 Blanche Pacos, the owner of real property located at 2987 Straight Road, Fredonia, New York, signed a document which stated as follows “Thomas Pacos has the right of life-long tenancy of house and contents located at 2987 Straight Road, Fredonia, NY paying taxes, insurance, upkeep of house.” Her signature is on the document and in parentheses after her name is (Mother). The document is dated at the top. There is a notary stamp at the bottom and notary signature but no acknowledgment by the notary as to whose signature she is verifying. The document also contains the signature of the four siblings of Thomas, the plaintiffs herein. (Exhibit A to defendant’s cross motion.)
On December 30, 1996 Blanche Pacos executed a formal deed which appears to have been prepared by an attorney. It is witnessed by attorney Albert Foley. Blanche Pacos, as the grantor, transfers the property to Thomas, Albin, Ronald and David Pacos and Julianne DiLorenzo reserving to herself a life estate. The deed sets forth that as the life use tenant, she will be responsible for payment of all taxes, fire and liability insurance and maintenance. The deed is duly recorded in the Chautauqua County Clerk’s office and makes no mention of the life estate to Thomas.
*701 Blanche Pacos died, on September 3, 2004. An action by the plaintiffs against their brother demanding the sale of the property was commenced on September 16, 2005. The complaint states “said property is so situate that partition thereof among the parties entitled thereto, according to their respective rights and interests, cannot be had without great prejudice to the owners thereof.” (Exhibit A to plaintiffs’ motion.) Plaintiffs are seeking a sale not a partition.
Law
Section 243 of the Real Property Law states, in pertinent part,
“A grant in fee or of a freehold estate, must be subscribed by the person from whom the estate or interest conveyed is intended to pass, ... If not duly acknowledged before its delivery ... its execution and delivery must be attested by at least one witness, or, if not so attested, it does not take effect as against a subsequent purchaser . . . until so acknowledged.”
This statute has been in substantially the same form since the 1800s and the pertinent cases the court has found are from the late 1800s.
Starting with the document dated December 22, 1996, there is no dispute that the document is signed by Blanche Pacos. She meets the requirement of the statute as being “the person from whom the estate or interest conveyed is intended to pass.” She conveys a life estate in the writing to her son Thomas.
At the time the December 22, 1996 document was signed Blanche Pacos owned the property and could be the grantor of a life estate. The document is also signed by the named plaintiffs. While the plaintiffs argue this means the document has no legal significance since they did not agree to Mr. Pacos having a life use of the property, it did not require their agreement for him to have a life use because at that time they did not own it. The document only needed to be signed by Blanche Pacos. However, by having the plaintiffs sign it, it appears Blanche Pacos was making the plaintiffs aware of the grant of the life estate and her wishes. There is no argument from any of the plaintiffs that their signatures are not on the document and the plaintiff, Ronald Pacos, states in his affidavit that his mother did request the plaintiffs sign the document “indicating the Defendant Thomas Pacos could live at the property for his life time.” Indeed the defendant Thomas Pacos has lived at the property long before *702 the document was signed in 1996, after the document was signed in 1996, right up to the present.
 There is also no dispute the document is not duly acknowledged and is not in a form which would allow the document to be recorded in the clerk’s office. According to statute, an improperly executed grant “does not take effect as against a subsequent purchaser” (Real Property Law § 243).
The issue is whether the plaintiffs in this case are “subsequent purchasers” against whom the document is not effective.
In Chamberlain v Spargur (86 NY 603 [1881]) the Court in a case of first impression rendered an opinion on how the word “purchaser” in the predecessor statute to section 243 should be construed. In Chamberlain, a grantor gave the plaintiff a deed that was not acknowledged by the grantor nor attested to by a subscribing witness. The grantor subsequently gave another deed which was duly executed and properly acknowledged to the defendants. The defendants were apparently not “purchasers in good faith and for value” as argued by the plaintiffs although they held the duly executed and properly acknowledged deeds. The plaintiffs therefore argued that the term “purchaser” must mean a purchaser “in good faith and for value” thereby rendering the later perfected deeds ineffective as against the earlier imperfect deeds.
The very similarly worded statute (3 Rev Stat of NY, part II, ch I, tit II, § 137 [7th ed 1882]) which required the Court’s interpretation of “purchaser” read as follows: “Every grant in fee of a freehold estate shall be subscribed and sealed by the person from whom the estate or interest conveyed is intended to pass ... if not duly acknowledged ... it shall not take effect as against a purchaser.” The Court noted (at 607-608), “The grantor who has signed a deed, unattested and unacknowledged, is left with the power of effectively conveying by a later deed properly executed. The party who has taken the imperfect instrument does so at his peril, and with eyes open to the consequences.” The Court (at 608) went on to state, “The imperfect and unattested deed has no affect against any purchaser or incumbrancer; but the perfect grant, duly acknowledged or attested so as to be fully operative as such, is conclusive against subsequent purchasers.” The Court noted the statute did not say “purchasers in good faith and for value” and the omission of the descriptive words in the statute could not be deemed an inadvertence but must be intentional and therefore the statute must be construed literally and just as it reads.
*703 The word “purchaser” in section 243 has no additional descriptive terms and therefore is not limited to a “purchaser in good faith and for value.” The plaintiffs herein while not having paid any money for their interest in the property are “purchasers” pursuant to long held statutory construction. Black’s Law Dictionary 1235 (6th ed) defines “purchaser” in pertinent part as follows: “One who acquires real property in any other mode than by descent.” Had Mrs. Pacos not executed the deed which was recorded in 1996 and the children inherited the land, the grant of the life estate would be effective. However, having given a deed, plaintiffs are “purchasers” under section 243. While the grant of the life estate by the mother, Blanche Pacos, to Thomas Pacos was effectively given on December 22, 1996, the later deed by virtue of section 243 of the Real Property Law makes the grant ineffective as against the plaintiffs who are “subsequent purchasers” as that term has been held to mean even though they paid no money for the property.
The definition of “purchaser” as set forth in Black’s Law Dictionary and the Chamberlain case is supported in the later Court of Appeals case of Strough v Wilder (119 NY 530 [1890]). A dispute arose between the holder of an unrecorded deed and the challenger who received a deed conveyed by decedent’s heirs following her death. The Court noted that an unacknowledged and unattested deed shall not take effect as against a purchaser as noted in the predecessor to Real Property Law § 243. In looking at the definition of the term purchaser the Court stated,
“The word ‘purchaser’ in this statute means one who derives title by purchase from the grantor in the unacknowledged and unattested deed, or from one who himself is mediately or immediately a purchaser from such grantor. The word purchase, as designating the origin and nature of title to real property, has a technical but well settled meaning. It includes every mode of acquisition of an estate in land known to the law, except that by which an heir on the death of his ancestor becomes substituted in [her] place as owner by operation of the law.” (Strough at 535 [emphasis added].)
The plaintiffs in this case became owners not by operation of law on the death of their mother, but by operation of the signed, recorded deed.
It is this court’s conclusion that while the December 22, 1996 document gave Thomas a life estate, and it is doubtful that Blanche Pacos understood that even though she had her other *704 children sign and acknowledge her desire to allow Thomas to live in the home for his lifetime, by signing and filing the later deed she invalidated her stated express desire to allow Thomas to remain in the house for his lifetime. Had she done nothing, Thomas would have a valid life estate.
Plaintiffs argue, in an attempt to reach an equitable result reflecting Mrs. Pacos’ wishes to allow Thomas a life estate, that pursuant to section 901 of the Real Property Actions and Proceedings Law, a partition cannot be ordered because there is prejudice. The statute reads, “A person holding and in possession of real property . . . may maintain an action for the partition of the property, and for a sale if it appears that a partition cannot be made without great prejudice” (RPAPL 901 [1]). The prejudice of a partition allows for a sale. The court is not satisfied that a sale must take place as there are 100 acres of land which may have substantial value.
Therefore the order of the court is as follows: ordered that plaintiffs are awarded summary judgment to the extent that a partition or sale may take place upon further order of the court and the defendant’s affirmative defenses are dismissed; and it is further ordered that Stephen E Zanghi, Esq. is appointed Referee to first determine whether the property should be partitioned or sold in one piece; and it is further ordered that the Referee may consult with whatever real estate experts may be necessary to make the determination bearing in mind that any cost should be reasonable and commensurate with the value of the property with the cost to be borne by the plaintiffs.